Rosito **ASUNCION, as Special Administrator of the Estate of Edilberto Asuncion, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois Company, Defendant.**

Civ. No. 90–00447 ACK.

United States District Court, D. Hawaii.

July 5, 1991.

Erlinda Dominguez, William Copulos, David Kuwahara, Honolulu, Hawaii, for plaintiff.

William C. McCorriston, Darolyn Hatsuko Lendio, Richard B. Miller, McCorriston Miho & Miller, Honolulu, Hawaii, for defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

I. Introduction

This matter came on for hearing on Plaintiff's and Defendant's respective mo-

tions for summary judgment. Similar motions came before the court in November 1990, presenting an issue regarding the application of Hawaii No–Fault Insurance law. Because the Hawaii state law on this issue—the issue of what constitutes injury "arising out of the operation" or use of a motor vehicle—was somewhat unclear at the time, and because *Merrill v. Hawaiian Insurance Cos., infra,* a case on that very issue (with facts very similar to those of the instant case) was then pending before the Hawaii Supreme Court, the court denied the motions, but granting leave to refile after the Hawaii Supreme Court ruled in *Merrill.* That *Merrill* decision came down in March 1991, but only as a memorandum opinion, finding no error in the lower court decision. The summary judgment motions were refiled, and are now before the court.

## II. Facts

The essential facts were explained in the Order entered by the court on December 10, 1990 (the "Order"):

> On September 19, 1989, decedent Edilberto Asuncion ("Asuncion") was one of three occupants of an automobile owned by Juan Patoc ("Patoc") and insured by Defendant Allstate Insurance Co. ("Defendant"). The car was in the parking lot of Farrington High School, waiting to exit the lot. Although the car was stopped, it was in gear with its engine running.
>
> A gunman then walked up to the stopped vehicle and shot Asuncion in the head through the rear passenger window. Asuncion died later that day. The other two occupants of the vehicle fled on foot, with the gunman pursuing, and the vehicle rolled into another car.

Order at 1–2. When claims were made on Patoc's no-fault automobile insurance, Defendant rejected them on the ground that the injury did not "aris[e] out of the opera-

tion, maintenance, or use" of the automobile. Allstate Policy, Part II, p. 9; Haw. Rev.Stat. § 431:10C–303. Plaintiff then brought this suit for the claimed benefits.

## III. The Motions for Partial Summary Judgment

Both Plaintiff and Defendant have refiled their motions, seeking summary judgment on the issue of no-fault coverage. In addition, the Plaintiff seeks costs and attorneys' fees. The question is whether Asuncion's injury (and subsequent death) *arose out of the use* of the motor vehicle within the terms of the statute and the insurance policy.

### A. The Ganiron Decision

The key case in Hawaii addressing this issue is *Ganiron v. Hawaii Ins. Guar. Ass'n,* 69 Haw. 432, 744 P.2d 1210 (1987), in which the no-fault claimant was driving his car on the freeway when he was struck by a bullet fired from another moving vehicle. On these facts the court found coverage:

> In our opinion, appellee's injuries fall within the definition … because the incident was a motor vehicle accident … since it occurred because of the operation, maintenance, or use of the vehicles in question. Both the gunner and the appellee were occupying motor vehicles traveling on the highway when the incident occurred. If the gunner instead of shooting appellee had injured him by ramming appellee's car with his car, there would be no question that the injuries were covered. Given the policy of the statute as set forth in the language quoted above,[1] we see no distinction between the two events.

69 Haw. at 435, 744 P.2d 1210.

Significantly, the *Ganiron* court discussed the varying and divergent approaches to this issue employed by the courts of other states:

> Some, using the "causal connection" rationale, have denied coverage, holding

---

**1.** The "language quoted above" was the statutory statement of purpose:

> The purpose of this chapter is to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to

compensate these damages without regard to fault, and to limit tort liability for these accidents.

Haw.Rev.Stat. § 294–1(a).

that an injury resulting from the firing of a gun from a vehicle, as distinguished from an injury inflicted by the vehicle itself, is not covered. Other states using either a "nexus" test or a "territoriality" test have held that there is coverage in such situations.

*Ganiron,* 69 Haw. at 434–35, 744 P.2d 1210. Although the Hawaii Supreme Court did find coverage in this instance, it never made clear whether it was adopting a "causal connection" test, a "nexus" test, or a "territoriality" test. The court simply refused to distinguish between a scenario in which the assailant rams his car into the victim's car, and that in which the assailant fires a gun from his moving vehicle into the vehicle of the victim. *Id.* at 435, 744 P.2d 1210.

Like *Ganiron,* this is a case in which the occupant of a vehicle is shot by an assailant, and application of a pure "nexus" or "territorial" test could support finding coverage.[2] However, this is *not* a case in which "the gunner instead of shooting [the victim, could have] injured him by ramming [the victim's] car with his car." *Ganiron,* 69 Haw. at 435, 744 P.2d 1210. Thus the explicit rationale of *Ganiron* does not apply to this case.

### B. *The Merrill Case*

The case that we had hoped would resolve the matter for us was *Merrill v. Hawaiian Insurance Cos.,* MVI–87–25 (June 13, 1989), *aff'd* Hawaii Circuit Court Cv. No. 89–1895 (1989). In *Merrill,* the claimant was involved in a near miss, and both cars came to a stop. The other driver came over to the claimant's vehicle on foot, engaged in a heated verbal exchange, and while claimant sat in his car, punched him in the jaw. The Special Hearings Officer had recommended a finding of coverage,

based on her application of *Ganiron.* The Commissioner disagreed, applying the "causal connection" test and holding that

[t]here has been no adequate showing that public policy considerations as envisioned by the legislature would extend the concept of "casual [sic] connection" far enough to include matters of this nature within the no-fault system.

*Merrill,* Commissioner's Final Order at 2. The state circuit court affirmed the Commissioner and Merrill appealed to the Hawaii Supreme Court. It was while the appeal was pending that these motions for summary judgment first came before this court. Rather than anticipate the Hawaii Supreme Court's resolution of the matter in *Merrill,* this court denied the motions with leave to refile after the *Merrill* ruling.

Unfortunately, the Hawaii Supreme Court declined to issue an opinion clarifying *Ganiron* or indicating what test should apply. Rather, in a memorandum opinion, the court simply affirmed, "find[ing] no error in the Insurance Commissioner's conclusions." *Merrill,* Circuit Court Cv. No. 89–1895, Supreme Court No. 14579, Memorandum Opinion at 2.

Although we do not have a Supreme Court opinion we can cite or rely on in *Merrill,* the Commissioner's conclusion remains intact, a conclusion that explicitly applied and construed the "causal connection" test:

[t]here has been no adequate showing that public policy considerations as envisioned by the legislature would extend the concept of "casual [sic] connection" far enough to include matters of this nature within the no-fault system.

*Merrill,* Commissioner's Final Order at 2. Moreover, the Hawaii Supreme Court declined a clear opportunity to take issue

---

2. But note that Florida, which unlike Hawaii has explicitly adopted the "nexus" test, has denied coverage on facts such as these. *Allstate Ins. Co. v. Famigletti,* 459 So.2d 1149 (Fla.App. 1984). In *Famigletti,* the claimants had an ongoing feud with their neighbors, and as they were pulling out of their driveway in their car, the neighbor stepped out from behind a tree and opened fire with a machine gun. The court denied coverage:

[The neighbor's] attack was not caused by nor did it arise out of the use of the automobile. The automobile was merely the situs of the attack.... [The neighbor] intended to murder the [claimants]. The mere fact that he chose the site of their automobile for his attempted slaughter does not provide a sufficient nexus between the assault and the use of the car to warrant ... coverage.
*Famigletti,* 459 So.2d at 1150.

with that determination. As the Ninth Circuit said in *Henkin v. Northrop Corp.*, 921 F.2d 864, 867 (9th Cir.1990):

> When a decision turns upon applicable state law, and the state's highest court has not adjudicated the issue, [a federal] Court must determine what decision the highest state court would reach if faced with the issue. Dicta from the highest court in the state, while not controlling, is relevant to this inquiry.

(Citation omitted.)

Left to speculate as to how the Hawaii Supreme Court would rule on the issue, the court finds it significant that the Commissioner's approach has withstood challenge. The Commissioner has interpreted *Ganiron* to provide a "causal connection" test, and there is absolutely nothing in the *Merrill* case or in any other[3] to cast doubt on that interpretation.[4]

### C. *Interpretation of the Merrill Decision*

Both parties directly apply the *Merrill* decision to the facts of this case. Plaintiff attempts to distinguish the case along several lines.[5]

First, Plaintiff notes that Merrill was the driver of the vehicle, whereas Asuncion was a passenger of the vehicle. Thus, in *Merrill*, the inquiry had to focus on Merrill's *operation* of the vehicle (as driver). In the instant case, by contrast, the inquiry must focus on Asuncion's *occupation* of the vehicle (as passenger). Although there was no causal connection between Merrill's *operation* of his vehicle and his injury, Plaintiff argues, there *is* such a connection between Asuncion's *occupation* of the vehicle and his injury. Plaintiff's theory is that Asuncion's place in the vehicle "caused" the injury because the car held him trapped like a "sitting duck."

Plaintiff's argument fails for two reasons. First, although Merrill was a driver, he was also an occupant of his vehicle, and the Commissioner refused to find a causal connection between his occupation of the vehicle—his "sitting duck" status—and his injury. Second, the "sitting duck" theory fails because the car protected Asuncion as much as it made him vulnerable. If he had not been in the car, he would have been in plain view and could have been shot from a distance.

Plaintiff contends that because the gunman fled in a motor vehicle, the getaway car played a role in causing the injury, and the injury, therefore, "was caused by" the operation of that car. Plaintiff posits that the driver of the getaway car was a cocon-

---

**3.** *See also Icban v. State Farm*, MVI–89–61 (September 28, 1990), *aff'd*, Circuit Court Cv. No. 90–3400–10 (May 14, 1991). *Icban* involved a claimant who was sitting in his car with the engine running in front of a hotel, when an assailant walked up, said "What, you think your car bad?", and punched the claimant through the window. The Commissioner held that although the attack appeared to have been motivated by the claimant's car or the way in which he operated it, the injury nonetheless did not arise out of the operation of the vehicle:

> The [Claimant's] car was not the instrumentality of Claimant's injuries, and the relationship between Claimant's injuries and the motor vehicle was merely incidental and fortuitous.

*Icban*, Findings of Fact and Conclusions of Law at 5.

Again, the assault had *some* causal link to the claimant's motor vehicle, as evidenced by the assailant's comment before throwing the punch. *Icban* too, therefore, presents a stronger case for coverage than this, but the Commissioner and the state circuit court found that it was not enough.

Although *Icban* has now been appealed to the Hawaii Supreme Court, there seems little point in awaiting another determination. *Merrill* presented a closer question, and it is unlikely that *Icban* will draw more scrutiny than *Merrill* did.

**4.** It should be noted as well that this court applied the "causal connection" test in a case antedating *Ganiron*. *State Farm Mut. Auto. Ins. Co. v. Fernandez*, 567 F.Supp. 413 (D.Haw.1983), *aff'd*, 767 F.2d 1299 (9th Cir.1985) held that

> for an accident to "arise out of" the use of a motor vehicle, there must be a sufficient causal relationship between the injury and the use of the vehicle for transportation purposes.

*Id.* at 415. Significantly, *Ganiron* did not purport to reject or distinguish *Fernandez*, so *Fernandez* could, at least arguably, still be considered good law in this court.

**5.** These arguments are made notwithstanding plaintiff's attempts to persuade the court to disregard *Merrill* altogether. Plaintiff's Memorandum at 3.

spirator of the gunman to make this argument. In the alternative he argues that there is a question of fact as to whether the driver of the getaway car was acting in concert with the gunman, and that this question should defeat Defendant's summary judgment motion.

This argument is evidence of either the resourcefulness or the desperation of the Plaintiff in this case. It strains the limits of common sense and credibility to suggest that anytime someone flees in a getaway car after causing injury, the injury may be deemed "harm ... arising from motor vehicle accidents," compensable under a no-fault automobile insurance policy. Haw. Rev.Stat. § 294-1(a). The possibility that the driver of the getaway car may have been a co-conspirator is hardly a "genuine issue of *material* fact"; the resolution of that factual issue could not possibly shed any light on the issues now before the court.

Plaintiff's attempts to distinguish *Merrill*, therefore, fail. If anything, *Merrill* presents a much stronger case for finding a causal connection since it was the interaction of the cars on the highway that incited the assailant to violence.[6] There is absolutely no evidence to suggest that Asuncion's assault was in any way prompted by his use of a motor vehicle.

### D. *Application of the Law*

Although the Hawaii Supreme Court has failed to unequivocally embrace the causal connection test, there is precious little basis for this court's adopting or employing any other. *Ganiron* is unclear, but *Merrill*, *Icban* (*supra* note 3) and *Fernandez* (*supra* note 4) all explicitly employ the causal connection test. Despite clear opportunities to do so, the Hawaii Supreme Court has not taken issue with those decisions or with that approach.

Applying the causal connection test to the facts before it, the court finds no causal link between the use of the vehicle and the injury sustained. The attack was not made from a car or with a car. The attack was not facilitated by or motivated by anyone's use of a motor vehicle. Asuncion's presence in the vehicle was purely coincidental—he could have, and presumably would have, been shot just as easily had he been sitting on a bench or a chair. Indeed, such an attack might have been easier absent the car, since Asuncion could have been targeted from a distance.

Under the causal connection test, therefore, Defendant must prevail on the motion for summary judgment. The court notes as well, however, that even if it were to apply a "nexus" test, such as that adopted in the state of Florida, the result would be the same, and no coverage would be found. *See supra* note 2.

In order for the court to reach a contrary conclusion, it would have to rely on ambiguous language in *Ganiron* to reject *Merrill*, *Icban* and *Fernandez*, and define a "nexus" or "territoriality" test even more liberal than that adopted in Florida. The court is unwilling to strain the existing law to this degree.

Accordingly Defendant's motion for partial summary judgment is GRANTED, and plaintiff's motion, as well as his request for attorneys' fees, are necessarily denied.

IT IS SO ORDERED.

---

**6.** The same is true of *Icban, supra* note 3. In that case as well, the motivation for the assault was at least arguably linked to the motor vehicle or claimant's operation of it. Still, the Commissioner and the Circuit Court found no coverage.