HAWAIIAN INSURANCE AND GUARANTY COMPANY, LTD., Plaintiff-Appellee, *v.* CHRISTINE BROOKS, Defendant-Appellant, and ISAAC BUNKER and ROBERT CARROLL, III, Defendants

NO. 7576

HAWAIIAN INSURANCE AND GUARANTY COMPANY, LTD., Plaintiff-Appellee, *v.* CHRISTINE BROOKS and ROBERT CARROLL, III, Defendants-Appellants, and ISAAC BUNKER, Defendant

NO. 9447

(CIVIL NO. 54719)

AUGUST 15, 1984

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The scope of a policy of basic automobile liability insurance is at issue in these appeals from summary judgments entered in favor of the insurer by the Circuit Court of the First Circuit. The dispositive question is whether the rape of a passenger in an insured vehicle by another passenger was an "occurrence" that gave rise to a duty on the insurer's part of defending a tort suit brought by the victim against the driver. The circuit court held it was not, and we have to agree.

I.

On November 14, 1976, as she walked along the highway between Kihei and Lahaina on Maui, Christine Brooks was offered a ride by the driver of a Chevrolet pick-up truck owned by Continental Auto Repair, Inc. (Continental). Since the driver, Robert Carroll III,[1] and a female passenger were the only occupants of the vehicle then visible, Ms. Brooks assumed it would be safe to accept the offer. But unbeknownst to her, there was another passenger; Isaac Bunker, an employee of Continental, was in the rear section of the pick-up truck. And shortly after entering the vehicle, she was "assaulted, battered, and raped" by Bunker.

She subsequently brought an action against Bunker, Continental, and Carroll in the Circuit Court of the Second Circuit, seeking general, special, and punitive damages. She averred that Bunker's acts, which were intentional or in wanton and callous

---

[1] Carroll was not an employee of Continental.

disregard of her rights, feelings, and sensitivities, gave rise to punitive, as well as general and special, damages. These acts, she charged, occurred in the course of Bunker's employment with Continental, and the employer was therefore responsible under the doctrine of respondeat superior.[2] She averred further that Continental was negligent in failing to supervise Bunker and in retaining him in its employ. Carroll, she alleged, was culpably negligent when he did not restrain Bunker or come to her aid.

Hawaiian Insurance and Guaranty Company, Ltd. (HIG), Continental's insurance carrier, assumed the defense of the action on behalf of the auto repair company, and counsel engaged to represent it responded to the complaint by averring, *inter alia,* that the truck had been used by Bunker and Carroll on the fateful day without the owner's permission and their acts in no way gave rise to liability on Continental's part. Continental thereafter sought summary judgment, reiterating the absence of a permissive use of the insured vehicle by Bunker and Carroll. Plaintiff's counsel stipulated to the entry of a summary judgment in favor of Continental, and it was subsequently dismissed with prejudice from the case. In view of its stated position, the insurer, of course, did not undertake to defend Bunker and Carroll, who neglected to answer or otherwise plead to the complaint. As a consequence, judgments by default were ultimately entered against them, jointly and severally, for general damages in the sum of seventy-five thousand dollars and punitive damages in the sum of one million dollars.

In the meanwhile, HIG commenced an action in the Circuit Court of the First Circuit, seeking a declaration of its duties under the automobile liability policy issued to Continental and naming Christine Brooks, Isaac Bunker, and Robert Carroll, III as defendants. It averred the injuries and damages claimed by the rape victim in her suit against Continental did not arise from the ownership, maintenance, or use of the insured automobile, Bunker had no permission to use the vehicle or the use was not within the scope

---

[2] Whether Bunker had permission to use the truck has not been determined. However, November 14, 1976, when the unfortunate event occurred, was not a working day for Bunker.

of any permitted use, there was no "occurrence" within the meaning of the policy that gave rise to coverage thereunder, and the insurer thus had no obligation to defend or to pay any judgment rendered as a consequence of the suit.

In her answer to the complaint, Ms. Brooks denied the foregoing allegations and prayed the court decree that the policy provided the coverage in question. When HIG moved for summary judgment against her, she countered with assertions that the use of the truck by Bunker and Carroll was with permission, the rape arose out of the ownership, maintenance, or use of the vehicle, and the rape was an "occurrence" within the meaning of the policy. Whether there was a permissive use and whether the rape arose from the ownership, maintenance, or use of the truck, she urged in the alternative, were questions for the trier of fact.

The circuit court awarded summary judgment as prayed by HIG, and Ms. Brooks appealed. This court, however, dismissed the appeal on grounds of prematurity, inasmuch as there was no indication in the record of defaults having been entered against Bunker and Carroll or of a disposition of the claims against them.

The dismissal of the appeal triggered a belated but nonetheless effective answer and counterclaim in which Carroll asserted several defenses ranging from estoppel to laches and a claim for damages premised on the insurer's failure to defend him in the action brought by the victim and the entry of the substantial award in her favor. HIG sought a summary disposition of its claim against Carroll and succeeded. The circuit court, however, denied its motion for summary judgment on the counterclaim, granting instead a partial judgment in Carroll's favor because of the insurer's decision not to defend him in the earlier tort action. But the court had second thoughts on the award of partial summary judgment to Carroll. It granted the reconsideration sought by HIG and instead awarded the insurer judgment on Carroll's claim. Ms. Brooks was allowed to reinstate her premature appeal thereafter, and Carroll perfected his timely appeal to this court.[3]

---

[3] The appeals do not involve Bunker since HIG was awarded a default judgment against him after Ms. Brooks' abortive appeal to this court was dismissed. The judgment provided in part that "Plaintiff has no obligation to defend Isaac

## II.

We are called upon to decide whether an insurer who issued an automobile liability policy to the owner of a truck is obligated to defend and assume the liability for damages when a claim for damages is asserted against a driver who did nothing to prevent the rape of a female passenger by another passenger in the truck's rear section. "An insurer's duty to defend," we have said, "arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy." *Standard Oil Co. of California v. Hawaiian Insurance & Guaranty Co.,* 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982) (citing *Gray v. Zurich Insurance Co.,* 65 Cal. 2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966)). "The nature of the . . . duty . . . is purely contractual and depends, in the first instance, on the language of the particular policy involved." *Ritter v. United States Fidelity & Guaranty Co.,* 573 F.2d 539, 542 (8th Cir. 1978); *see also First Insurance Co. of Hawaii v. State,* 66 Haw. 413, 417, 665 P.2d 648, 651 (1983). Thus in considering whether there was a possibility of indemnification liability here, we turn first to the pertinent provisions of the contract between HIG and Continental.

### A.

HIG promised to pay on behalf of Continental and other unnamed persons insured under the automobile liability policy all sums which they became

legally obligated to pay as damages because of

A. bodily injury . . . .

. . . .

*to which this insurance applies, caused by* an *occurrence and arising out of* the ownership, maintenance or *use,* . . . for the purposes stated as applicable thereto in the schedule, of an owned automobile . . . , and the company shall have the

---

Bunker nor to pay any judgment against Isaac Bunker in connection with the Complaint in Civil No. 3222 in the Circuit Court of the Second Circuit, State of Hawaii."

Record, Vol. 2, at 94-95.

> right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . , even if any of the allegations of the suit are groundless, false or fraudulent . . . .

(Emphasis supplied). The persons insured under the automobile liability policy include:

> (a) the named insured; [and]
>
> . . . . .
>
> (c) any other person while using an owned automobile . . . with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . . .

"Occurrence" is defined elsewhere in the contract between the insurer and the named insured in the following manner:

> '[O]ccurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The relevant contractual language therefore serves to insure any person using an automobile owned by Continental with its permission against damages for bodily injury resulting from an accident and arising out of the use of the automobile. The insured risk, however, is further limited to damages flowing from bodily injury that is neither expected nor intended from the insured's perspective. Our task, then, is to decide whether the rape and Carroll's implication therein constituted an accident arising from the use of the truck and whether the harm suffered thereby was neither expected nor intended from the standpoint of the insured.[4]

### B.

We are guided in the task by the broad principle that "[t]he objectively reasonable expectations of [policyholders] and intended

---

[4] There is, of course, substantial doubt that Carroll was insured under Continental's policy. He was not an employee, and the "named insured" has steadfastly maintained it gave him no permission to use the pick-up truck. But we assume for the sake of this appeal that he was an intended beneficiary of the policy under its "omnibus insured" clause, inasmuch as the appeal is from the grant of summary judgments.

beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[5] Keeton, *Insurance Law Rights at Variance With Policy Provisions,* 83 Harv. L. Rev. 961, 967 (1970); *see also Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. 203, 209-10, 684 P.2d 960, 964 (1984).

Whether the rape was an "occurrence" within the scope of the contract from the policyholder's perspective is, of course, not in dispute. HIG's acceptance of the defense of the underlying tort suit on Continental's behalf manifests agreement between them that the rape committed by an employee was an unfortunate happenstance from the standpoint of the named insured and the resulting bodily injury was neither expected nor intended as far as it was concerned.[6] But like the insurer, we find no coverage was contem-

---

[5] In Professor Keeton's view this broad principle incorporates several propositions. As he explains:

First, as an ideal this principle incorporates the proposition that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters. Arguably that proposition should be regarded as a corollary of the principle of resolving ambiguities against the insurer. The principle of honoring reasonable expectations should be extended further, protecting the policyholder's expectations as long as they are objectively reasonable from the layman's point of view, in spite of the fact that had he made a painstaking study of the contract, he would have understood the limitation that defeats the expectations at issue. The question whether the policyholder has sufficiently examined the policy is only one part of the overall calculation of the objective reasonableness of his expectations.

83 Harv. L. Rev., at 967.

[6] This is consistent with Huntington Cab Co. v. American Fidelity & Casualty Co., 155 F.2d 117 (4th Cir. 1946), where the court found the injuries sustained by a taxicab passenger from an unprovoked and unauthorized assault by the cab driver were due to an "accident" within the coverage of the taxicab owner's automobile liability policy and held the insurer had a duty to indemnify the cab owner for damages he had paid to the victim. It is also consistent with Nassau Ins. Co. v. Mel Jo-Jo Cab Corp., 102 Misc. 2d 455, 423 N.Y.S.2d 813, *aff'd,* 432 N.Y.S.2d 29 (1980), where the court said "it would be inconceivable . . . to exclude coverage to the innocent named insured for an assault committed by . . . its employee," but concluded "the employee omnibus insured must bear the full brunt of his alleged individual wilful and intentional act." 102 Misc. 2d at 462, 423 N.Y.S.2d at 817. The appellants cite these cases in support of their position here, but we find them inapposite for purposes of deciding whether the insurer had a duty to defend Carroll at any time.

plated for Carroll, the omnibus insured, in the situation at hand.

Although the rape may have arisen from the use of Continental's truck by Bunker and Carroll, Bunker's reprehensible act, viewed from his perspective, was anything but accidental. Moreover, the harm occasioned by his victim was hardly unexpected or unintentional. Carroll, however, claims he "did not intend for this to happen" and "did not expect for this to happen." He therefore maintains HIG owed him a duty to defend the suit which carried a potential for indemnification liability. But unlike Continental, Carroll was far from an "innocent" party to the rape; nor can we say the bodily injury suffered by Ms. Brooks was unexpected when the circumstances are viewed from his perspective.

Carroll swore in an affidavit submitted to the circuit court that he was the driver of the vehicle in which the rape occurred. He further acknowledged he "could see the incident taking place in the back of the truck." Yet he chose not to do anything to prevent or mitigate the harm suffered by the victim. If nothing more, it could be said he facilitated the commission of a felony and his conduct bordered on the criminal.

Given these circumstances, we can only conclude the "occurrence" in question was not one for which coverage was afforded Carroll. From his standpoint, it was not an accident that resulted in bodily injury neither expected nor intended. Though we are committed to honor the objectively reasonable expectations of an intended beneficiary of an insurance contract, *Sturla, Inc. v. Fireman's Fund Insurance Co., supra,* it was definitely unreasonable for Carroll to think Continental's automobile liability policy would protect him from liability in this instance, as much as it was for Bunker to think so. *See Nassau Insurance Co. v. Mel Jo-Jo Cab Corp., supra; Haser v. Maryland Casualty Co.,* 78 N.D. 893, 901, 53 N.W.2d 508, 513 (1952).

Since a potential for indemnification liability of insurer to insured never existed where Carroll was concerned, the award of summary judgments to HIG is affirmed.

*David C. Schutter (Judith Ann Pavey* with him on the briefs; *Schutter, Pavey & Cayetano,* of counsel) for appellants.

*Walter Davis (Robert P. Richards* with him on brief in No. 7576 and *John M. Cregor, Jr.,* with him on brief in No. 9447; *Davis, Playdon, Reid & Richards,* of counsel) for appellee.