HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., Plaintiff–Appellee, v. SATURNINO BLANCO, GLORIA BLANCO, CHARLENE BLANCO, ALLEN BLANCO and JAY BLANCO, Defendants–Appellants, and IRENEO V. GARCIA, Defendant

NO. 14242

(CIV. NO. 89–254)

DECEMBER 31, 1990

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

10

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a summary judgment entered below in favor of plaintiff–appellee Hawaiian Insurance and Guaranty Company, Ltd. (HIG) in a declaratory judgment action brought by it. We affirm.

On May 6, 1987, defendant–appellant Saturnino Blanco (Saturnino) was injured when defendant Ireneo V. Garcia (Garcia) shot a rifle in his direction. Gloria Blanco (Gloria), Saturnino's wife, was standing in the doorway of their home and observed the shooting incident. She claims to have suffered serious mental and emotional distress as a result thereof.

At the time of the shooting, Garcia was standing in the yard of his home. He was insured by HIG under a homeowner's policy issued by that company which provided in part:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> 1.  pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2.  provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent.

There is an exclusion in the policy which provides in part:

> **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**
>
> a.  which is expected or intended by the *insured*[.]

The definitions portion of the policy provides in part:

> *"occurrence"* means an accident, including exposure to conditions, which results, during the policy period, in:
> a. ***bodily injury;*** or
> b. ***property damage.***

On May 14, Garcia was indicted for the crimes of second degree attempted murder and place to keep firearms. On July 31, 1987, he entered a plea of no contest to attempted assault in the first degree.

HRS § 707–710, reads as follows:

> **Assault in the first degree.** (1) A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person.
>
> (2)  Assault in the first degree is a class B felony.

On November 18, 1987, Saturnino and Gloria Blanco and their children filed an amended complaint for personal injury against Garcia. That complaint alleged in Count I that Garcia willfully and intentionally fired a rifle at Saturnino, striking him in the leg. Alternatively in Count III, it was alleged that Garcia fired the rifle negligently. In Count IV it alleged that Gloria was standing a few feet away from Saturnino when Garcia maliciously and/or negligently discharged his loaded rifle at Saturnino, that she witnessed the shooting, and that Garcia's acts thus negligently inflicted serious emotional and psychological trauma and distress upon her.

On December 29, 1987, Garcia's attorney tendered the defense of the Blancos' suit to HIG. On February 3, 1988, HIG replied, acknowledging receipt of the letter, reserving its rights and asking cooperation in its investigation. The letter said in part:

> At face, and in the main, Plaintiff Saturnino Blanco is saying our named insured ***intentionally*** shot him in the presence of eyewitness family members, who are also

plaintiffs in this action. You have raised the affirmative defense of provocation in your Answer. Please explain to Mrs. Fujitake your understanding of the facts of this case.

(Emphasis in original.)

Apparently Garcia's attorney did not respond because on March 28, 1988, HIG again wrote to the attorney, rejecting the tendered defense, calling attention to the failure to respond and stating:

We have contacted counsel Brian Delima, who represented Mr. Garcia in the criminal case. We have reviewed the in–depth police report, and the Judgment papers concerning CR. No. 87–205.

It's clearly evident by these documents that Mr. Garcia committed an *intentional* act, was convicted of "attempted assault in the first degree", and is currently serving a sentence.

Under these circumstances, Mr. Garcia cannot reasonably expect us to defend him under his homeowners. Unless you can show us any facts to the contrary, we hereby disclaim any insurance relief for the Blanco suit and claims.

(Emphasis in original.)

On April 18, 1988, Garcia's attorney belatedly replied, again tendering defense and stating:

I am advised that your representative have been told explicitly the following:

1) That Mr. Garcia did not intend to [shoot] Mr. Blanco but shot away from Mr. Blanco and there must have been a ricochet if Mr. Blanco was hit at all;

2) That based upon the discussion with the Prosecutor's Office, a plea agreement was entered and Mr. Garcia pleaded no contest to a reduced charge;

3) At no time did Mr. Garcia state to Counsel or to Police that he intended to injure Mr. Blanco.

On September 15, 1988, Garcia and the Blancos entered into a stipulation which stated in part:

6. On or about May 6, 1987, Defendant negligently failed to act with due care towards Saturnino by discharging his loaded rifle four (4) times from a distance of about 25 feet, and thus, did negligently injure and harm Saturnino. Each bullet struck objects located fifteen (15) feet from where Saturnino was standing. As a direct and proximate result of the several shots fired, one of the bullets struck an object which in turn struck Saturnino in his right leg, causing bodily injury to Saturnino.

7. Defendant did not intend to injure Saturnino, but only wanted to scare him.

8. Such injuries were caused without any intentional act, negligence, or provocation on the part of Saturnino, Gloria, . . . .

. . . .

11. During the incident above described, Gloria, Charline [sic], and Allen were lawfully standing a few feet away from Saturnino on their residence property while Defendant was negligently discharging his loaded rifle, and did witness said shooting.

12. Defendant negligently failed to act with due care with respect to Gloria, and thus, negligently inflicted serious emotional and psychological trauma and distress upon Gloria.

Thereafter, the arbitrator entered awards, denying compensation to the Blanco children but awarding Saturnino $1,917 in special damages and $8,083 in general damages, and awarding Gloria $7,518.01 in special damages and $32,481.99 in general damages.

(The record before us does not disclose what the special damages awarded in either case were.)

Subsequently Gloria and Saturnino made demand upon HIG to pay the judgments, HIG refused and brought this action seeking a declaration that it was neither obliged to defend the action nor pay the judgments. The court below granted summary judgment to HIG and this appeal followed.

Under the terms of the policy, HIG had a duty to defend if a claim was brought against Garcia for damages because of bodily injury or property damage caused by an occurrence to which the bodily injury coverage applied. An "occurrence" is defined as an accident causing bodily injury. As previously noted, there is an exclusion from coverage for bodily injury which is expected or intended by the insured.

Two of our previous cases, both of which, interestingly enough, involved HIG, deal with the issue of when an insurer is obliged to defend its insured. In *Standard Oil Co. of California v. Hawaiian Insurance & Guaranty Co.*, 65 Haw. 521, 654 P.2d 1345 (1982), we stated:

> An insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy. . . HIG being both their insurance agent and insurer, we think it was perfectly reasonable for ASC and AAA to rely upon HIG to exercise its good judgment in their behalf. They had the right to expect that their insurance company would make a determined effort to ascertain not only from the pleadings but also from the insurer's own independent investigation whether the insured were entitled to defense representation under the policy. For as the court in *Spruill Motors, Inc. v. Universal Under. Ins. Co.*, 212 Kan. 681, 686, 512 P.2d 403, 407 (1973), has so aptly pointed out:

"[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. . . . [T]he duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good–faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation."

65 Haw. at 527, 654 P.2d at 1349.

Our only reported decision dealing with the problem of whether there is a duty to defend when the act which was done by the insured was an intentional one is *Hawaiian Insurance & Guaranty Co. v. Brooks*, 67 Haw. 285, 686 P.2d 23 (1984). Our opinion in that case approached the question of whether there had been an occurrence, that is an accident, by analyzing it from the viewpoint of the insured. We ruled that if the insured did something or, as in the *Brooks* case, failed to do something, and the insured's expected result of the act or omission was the injury, then the injury was not caused by an accident and therefore not an occurrence, and hence was not within the coverage of the policy, and since an investigation of the facts would have revealed that situation, there was no duty on the part of the insurer to defend the particular insured. In that case, the court was dealing with Carroll who was a driver of a company–owned vehicle, on which the company had taken out a casualty insurance policy, and thus was an additional insured. Carroll had given a ride to Brooks, the victim. Bunker, who was in the back of the truck, was an employee of Continental but Carroll, not an employee, was driving. Carroll observed Bunker raping the victim and did nothing to

try to alleviate the situation. We held that neither Carroll nor Bunker was entitled to a defense from the insurance company in that situation.

In the present case, when tender of the defense was made, and when the rejection of the defense occurred, HIG had available to it the fact of Garcia's no contest plea to attempted assault in the first degree, a willful and/or intentional crime.

However, we note that a plea of no contest, by the weight of authority, cannot be used against the person making it as an admission in any civil suit for the same act. 29 Am. Jur. 2d *Evidence* § 702 (1967).

On the other hand, the fact of Garcia's conviction would be evidence, although not conclusive evidence of his commission of the crime in question in a civil action. *Asato v. Furtado*, 52 Haw. 284, 474 P.2d. 288 (1970).

HIG thus could not rely solely on the conviction in refusing to defend.

But HIG had available the extensive police report which clearly indicated an intentional firing of the rifle by Garcia at Saturnino. The only reported statement by Garcia in that police report was voluntarily made by him while being taken to the station. The police report states:

> While transporting GARCIA to the Kau Police Station from Pahala for processing, he voluntarily, without being asked, made the following statement (statements were related in Ilocano).
>
> Related that sometime in the afternoon, he heard his fighting chickens making noise. He then went out to investigate. He had with him his rifle.
>
> He saw Saturnino BLANCO outside in the carport, then shouted at him and asked why he was throwing rocks at his chickens. Shortly thereafter, BLANCO ran to the house.

At this time GARCIA thought that BLANCO was going inside his house to get his gun. He then fired at BLANCO a couple of times. Related that he fired at him before BLANCO could shoot him.

BLANCO, in the meantime, went inside his house. When he came out, he was holding a gun. His wife followed him, and the wife took the gun away from BLANCO. Later GARCIA saw that the wife went to hide the gun in a shed which is located on the mauka side of the house.

HIG also had available to it the amended complaint by the Blancos against Garcia. With respect to Saturnino, that complaint alleged both intentional and negligent injury, and, with respect to Gloria, alleged emotional distress and trauma arising out of witnessing Garcia's firing the rifle in the direction of her husband.

Finally after Garcia's counsel had failed to respond to HIG's proper request for more information and HIG had refused the tender, counsel asserted that Garcia's intent in firing the rifle was only to scare Saturnino, that Saturnino was struck by a stone as a result of a ricochet (although the police report seems to indicate that he was struck by the bullet), and that Garcia had never told his attorney or the police that he intended to injure Saturnino.

Insofar as the claim of Saturnino goes, we do not see how it logically can be said that, based upon the information available to HIG in refusing to defend the case, the injury to Saturnino was the result of an accident. Given the best possible interpretation, Garcia fired the rifle in Saturnino's direction intending to frighten him. That physical injury might result from such an action is certainly something which a reasonable man in Garcia's position should have anticipated and expected.

We noted in *Brooks, supra,* that the reasonable expectation of policyholders regarding terms of insurance policies will be honored. Garcia could not reasonably expect to be covered or

defended with respect to injuries to Saturnino which arose from his intentionally firing a rifle in Saturnino's direction to frighten him even though the particular injury was unexpected. That being so, with respect to Saturnino Blanco's bodily injury, there was no accident and therefore no occurrence and, hence, no duty to defend.

The injury to Gloria Blanco poses a more difficult problem. However, the complaint alleges, and nothing in the record contradicts it, that Gloria's emotional injury and distress arose out of witnessing her husband being shot at. By the undisputed evidence in the record Gloria was in a position to be able to see Garcia and, accordingly, Garcia was in a position to be able to see her. His volunteered statement to the police indicates that he did see her. Moreover the police report indicates that Garcia and the Blancos were neighbors who knew one another. Hence Garcia knew there was a Mrs. Blanco living with Saturnino. Thus, regardless of whether Garcia saw Gloria, it is clear that a reasonable man in Garcia's position, firing a rifle intentionally in the direction of a woman's husband, would anticipate, and hence expect, that that woman might suffer emotional injury and distress at witnessing the incident. Accordingly, with respect to Gloria Blanco also, there was no accident and hence no occurrence and, therefore no duty to defend.

As to the issue of coverage, what we have previously said applies. The exception to coverage was for expected bodily injury. The bodily injuries sustained here were expected and accordingly, there was no coverage. Affirmed.

*John M. Adams* (Dixon & Okura) for appellants.

*Melvyn M. Miyagi* (Davis, Reid & Richards, of counsel) for appellee.