**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**Franklin L. CAGE, Mary L. Cage, Marlene Pezzimenti, Individually and on behalf of Joseph R. Pezzimenti, an Incapacitated Person, Defendants.**

Civ. No. 93–00548 BMK.

United States District Court,
D. Hawai'i.

Nov. 1, 1994.

Darolyn Lendio, Lisa Ginoza, McCorriston Miho Miller & Mukai, Honolulu, HI, for plaintiff.

Alan B. Burdick, Agena & DeWerd, Honolulu, HI, Paul H. Toyozaki, Honolulu, HI, for defendant Pezzimenti.

Cage was not represented by counsel.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KURREN, United States Magistrate Judge.

### I. INTRODUCTION

This case arises out of the fatal shooting, on August 17, 1990, of Joseph R. Pezzimenti by Franklin L. Cage, while Cage was seated in the driver's seat of his pick-up truck. The estate of Pezzimenti filed a tort action against Cage in State court. State Farm

Mutual Automobile Insurance Company ("State Farm"), issuer of the automobile liability and no-fault policy on Cage's pick-up truck, filed this action for declaratory relief, and subsequent motion for summary judgment, for a declaration by this court that it has no duty to either indemnify or defend Cage in the underlying lawsuit. As the following discussion explains in more detail, bodily injury liability and no-fault claims asserted by Pezzimenti under Cage's insurance policy are not covered by the State Farm policy because Pezzimenti's injuries were neither the result of an accident nor arose out of the use, operation, or maintenance of a motor vehicle. Accordingly, State Farm has no duty to either indemnify or defend Cage in the underlying lawsuit.

## II. *BACKGROUND*

Pezzimenti was employed by DYN Corporation, a private contractor, working in building 447 at the Naval Supply Center, Pearl Harbor, Hawaii. Cage's brother, Darryl, also worked for DYN Corporation in building 447. Cage was a security officer at Pearl Harbor Naval Base. Cage met his brother three or four times per week to eat lunch with him in Building 447, and picked him up every day after work. In August 1990, during these lunch time visits, Cage parked in the no-parking zone at Building 447. Cage and Pezzimenti engaged in several heated confrontations over Cage's illegal parking, his alleged failure to sign in when entering the building, and his alleged harassment of women working in the building.

On August 17, 1990, Cage and Pezzimenti had another lunchtime confrontation in Building 447. When Cage returned at 3:30 p.m. to pick up his brother, Cage and Pezzimenti resumed their earlier lunchtime confrontation, this time outside of the building. Cage and his brother got into Cage's truck. Pezzimenti got into his co-worker Billy Joe Johnston's car and drove off down Northampton Avenue. At some point along the road, the two cars were side by side, with Cage's car proceeding in the on-coming lane of traffic and Johnston's car to his right. While the cars were side by side, Cage and Pezzimenti yelled back and forth at each other. Cage's truck pulled in front of Johnston's and proceeded to the Halawa gate of the Naval Base.

Immediately before the gate, Pezzimenti got out of the car, and Johnston turned left into a parking lot. Pezzimenti ran after Cage's truck, yelling at and taunting Cage. Pezzimenti stopped at the fence while Cage's truck proceeded out through the Halawa gate to the traffic light at Kamehameha Highway. Pezzimenti walked across the street to the parking lot. Cage made a U-turn, re-entered the military base, and pulled into the parking lot past Pezzimenti. Cursing and yelling, Pezzimenti ran towards Cage's truck. Cage pulled out an empty gun, loaded it, and pointed it out of the window in Pezzimenti's direction. Pezzimenti approached the passenger's side of Cage's truck, reached in through the window over Cage's brother, and tried to hit and grab Cage. Cage fired a shot over Pezzimenti's shoulder. Pezzimenti knocked Cage's wrist with sufficient force to dislodge the gun from Cage's hand.

Whether Cage's truck was stopped when he fired the first shot is not clear. At some point, the truck was moving and Cage slammed on the brakes bringing the truck to a sudden stop. When the truck stopped, Pezzimenti extricated himself from the passenger's side window and went around to the driver's side. Shortly after the truck stopped, Cage shut off the ignition.

Cage retrieved the gun from the floor of the truck. When Pezzimenti reached Cage's side of the truck, he started to hit and pull Cage. Cage pointed the gun at Pezzimenti and fired a second shot. Pezzimenti died on December 13, 1993.

## III. *SUMMARY JUDGMENT STANDARD*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

(1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnotes omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible*, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the non-moving party. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630–31 (9th Cir.1987). Nevertheless, the standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict: Whether "reasonable minds could differ as to the import of the evidence." *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

## IV. *ANALYSIS*

■ Hawaii law controls the interpretation of contracts under dispute in diversity cases such as this, where the insurance was sold in Hawaii and covered insured risks entirely within Hawaii. *See Kim v. State Farm Mut. Auto. Ins. Co.*, 952 F.2d 314, 316 (9th Cir. 1991); *P.W. Stephens Contractors v. Mid American Indem.*, 805 F.Supp. 854, 857–58 (D.Haw.1992). This court will look to the law of Hawaii, therefore, to determine the substantive issues raised by the present motion.

### A. *Whether Pezzimenti's Death was an Accident.*

### 1. *Liability Coverage*

Defendants claim bodily injury liability coverage and a duty to defend under the following provisions of the State Farm policy:

SECTION I—Liability—Coverage A

We will:

1. pay damages, including punitive or exemplary damages, which an insured becomes legally liable to pay because of:

   a. bodily injury to others, ...

   caused by accident resulting from the ownership, maintenance or use of your car;

2. defend any suit against an insured for such damages with attorneys hired and paid by us.

In order for defendants to be able to recover, Pezzimenti's injury must have arisen (1) from an accident and (2) from the use, maintenance or ownership of Cage's truck.

■ Hawaii law instructs that the incident be viewed from the position of the insured to determine whether or not Pezzimenti's injuries arose from an accident. *AIG Hawaii Ins. v. Estate of Caraang*, 74 Haw. 620, 635, 851 P.2d 321, 328–29 (1993). Under the bodily injury liability portion of the policy, only Cage can be considered an insured.[1] Thus, Pezzimenti's injuries are covered only if the shooting was an accident from Cage's viewpoint.

■ The Hawaii Supreme Court held in *Caraang* that the shooting death of Caraang,

---

1. The liability portion of State Farm's policy defines "insured" to mean: "1. you; 2. your spouse; 3. the relatives of the first person named in the declarations; 4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and 5. any other person or organization liable for the use of such a car by one of the above insureds."

another driver, caused by the insured driver's passenger was accidental from the insured's point of view. *Id.* at 636–37, 851 P.2d at 329. The Hawaii Supreme Court relied upon the trial court's findings of fact which established that:

> [the insured driver] was attempting to evade [Caraang's] vehicle but failed to do so because of traffic conditions and [Caraang's] persistent hot pursuit of the truck; and (2) [the insured driver] was unaware that [his passenger] was in possession of a gun until after [his passenger] fired it at [Caraang] and therefore could not possibly have foreseen the shooting or done anything to prevent it.

*Id.* at 633, 851 P.2d at 327.

In contrast, the Hawaii Supreme Court held in *Hawaiian Ins. & Guar. Co.* v. *Brooks,* 67 Haw. 285, 292, 686 P.2d 23, 27–28 (1984) that a passenger's rape of a woman in the back seat of the insured's truck was not an accident from the insured's point of view. The court focused on the insured's knowledge and inaction. *Id.* at 292, 686 P.2d at 28. The insured driver in *Brooks* observed the rape and did nothing to prevent or stop it. *Id.* Consequently, the court found that "[f]rom [the insured's] standpoint" the harm was neither unexpected nor unintended. *Id.*

Applying the reasoning of *Caraang* and *Brooks* to the present case, Cage's shooting of Pezzimenti was not an accident. Unlike the insured in *Caraang,* Cage made no effort to evade the conflict. Instead of proceeding away from an obviously angry Pezzimenti, Cage turned his truck around, took out and loaded a gun, pointed it at Pezzimenti, then fired the gun two times. Although Cage states that he pulled out his gun to scare Pezzimenti and not to shoot him, Cage's intentional use of a gun was sufficient to negate Defendants' argument that the shooting was an accident. *See Hawaiian Ins. & Guar. Co., Ltd. v. Blanco,* 72 Haw. 9, 18, 804 P.2d 876, 881 (1990) (finding "[t]hat physical injury might result from [the intentional firing of a gun] is certainly something which a reasonable man in [the insured's] position should have anticipated and expected"). *Id.* at 18, 804 P.2d at 881. Similarly, Cage could reasonably anticipate that when he took out

the gun and fired it in Pezzimenti's direction it would cause Pezzimenti harm. Accordingly, the shooting from Cage's perspective was not an accident and the insurance policy's liability coverage is not implicated.

Alternatively, Defendants rely on *State Farm Fire and Casualty Co. v. Poomaihealani,* 667 F.Supp. 705, 708–09 (D.Haw.1987) for their argument that Cage acted in self-defense, rendering his actions unintentional and therefore, Pezzimenti's death was an accident. In *Poomaihealani,* the insured did not initiate the confrontation and tried repeatedly to extricate himself before slapping and pushing a neighbor. *Id.* at 706. Under those circumstances, the court held that the insured was not excluded from coverage under an insurance policy because there was a genuine question whether he acted in self-defense. *Id.* at 709. This incident is distinguishable from *Poomaihealani* however, because Cage initiated the confrontation in the parking lot and had the opportunity to avoid the conflict, making Defendants' self-defense argument implausible.

■ Finally, Defendants argue that the term accident includes intentional acts because the policy does not contain an exclusionary provision for intentional acts. Insurance policies are considered contracts of adhesion and, therefore, are construed liberally in favor of an insured, with any ambiguity resolved against the insurer. *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 209, 684 P.2d 960, 964 (1984). Ambiguity exists, however, " 'only when the contact taken as a whole is reasonably subject to differing interpretation.' " *Id.; see also Smith v. New England Life Ins. Co.,* 72 Haw. 531, 537, 827 P.2d 635, 638 (1992).

■ "The terms of an insurance policy must be interpreted according to their plain, ordinary and accepted sense in common speech in line with the objectively determined reasonable expectations of a lay person." *Caraang,* 74 Haw. at 626, 851 P.2d at 325. Defendants' argument that the word accident may be interpreted to include intentional acts is beyond a reasonable plain language interpretation. Cage could not reasonably expect to be covered for any tort

action regarding injuries to Pezzimenti which arose from his intentional pointing of a loaded gun at an unarmed victim. Thus, no ambiguity in the insurance contract exists with regard to the meaning of accident, and therefore, as a matter of law, there is no coverage for bodily injury liability.

### 2. No–Fault Coverage

Pezzimenti claims no-fault insurance benefits under the following provisions of Cage's insurance policy:

SECTION II—No–Fault—Coverage P

We will pay the following benefits in accordance with the No–Fault Act for bodily injury to an insured, caused by accident resulting from the ownership, operation, maintenance or use of a motor vehicle as a vehicle.

In order for Pezzimenti to be able to recover no-fault benefits, he must be (1) an insured and (2) his injury must have been caused by an accident resulting from the ownership, operation, maintenance or use of Cage's truck.

The no-fault section of State Farm's policy contains the following definition of insured which includes the victims of accidents:

Insured—means: 1. you or any relative; and 2. any other person whose bodily injury: a. arises out of; or b. if a pedestrian or a bicyclist, is caused by the operation, maintenance or use of a motor vehicle insured under the liability coverage of this policy.

To qualify as an insured, Pezzimenti's injuries must have arisen from the operation, maintenance, or use of Cage's truck. In addition, assuming Pezzimenti is an insured, the court must determine whether the shooting was an accident from his position. *See Caraang,* 74 Haw. at 635, 851 P.2d at 328–29. Whether the shooting was an accident from Pezzimenti's view, may be a genuine issue of fact. *Ganiron v. Hawaii Ins. Guar. Ass'n,* 69 Haw. 432, 435, 744 P.2d 1210, 1212 (1987) (finding that from the standpoint of the unknown gunner, victim's injuries were the result of either reckless or intentional conduct, but from victim's standpoint, they were accidental.) The following ruling concerning the

use of the vehicle, however, makes such a determination unnecessary.

B. *Pezzimenti's Injuries Did Not Arise Out of the Use, Operation, or Maintenance of an Automobile.*

Both the liability and no-fault provisions of Cage's insurance policy require that an accident arise out of, or result from, the use, operation or maintenance, of the insured motor vehicle. Courts have adopted either a causal nexus or territorial nexus test when determining coverage in a situation similar to the one at issue. *Asuncion v. Allstate Ins. Co.,* 776 F.Supp. 1432 (D.Haw.1991), *aff'd,* 975 F.2d 663 (9th Cir.1992). The causal nexus test examines whether or not the injury arose out of the use, operation or maintenance, of the motor vehicle; whereas the territorial nexus test examines whether the vehicle was the situs of the injury. Hawaii has adopted the causal nexus test. *Caraang,* 74 Haw. at 640, 851 P.2d at 330–31. Therefore, Pezzimenti's injuries are covered only if they *arose out of* the use, operation, or maintenance of the motor vehicle. *Asuncion,* 776 F.Supp. at 1435.

The Hawaii Supreme Court has established that more than a "minimal causal connection" must exist between the injury and the use of the vehicle. *Caraang,* 74 Haw. at 640, 851 P.2d at 330–31. The following factors must be met in order to prove more than a minimal causal connection:

(1) the extent of causation between the [vehicle] and the death rendered the [vehicle] an "active accessory;"

(2) an act of independent significance occurred to break the causal link; and

(3) the injury resulted from use of the [vehicle] for transportation purposes.

*Id.*

The incident at issue fails to satisfy any of the three elements of this test. First, Cage's truck was not an "active accessory" in causing the injury. Although there may be some question as to whether the truck was stopped when Cage fired the first shot, Cage's truck was stopped when he retrieved his gun and fired the fatal second shot. Cage may have used his truck to cause Pezzimenti to lose his

grip on Cage's wrist, however, Cage did *not* use his truck as an aid to fire the shot that fatally injured Pezzimenti.

Additionally, Cage's retrieval and second firing of the gun were independent acts sufficient to break the causal link between Cage's use of the truck to transport him to the parking lot and the injuries inflicted. Defendants argue that the truck was used to loosen Pezzimenti's grip on Cage's hand so that Cage could regain control of the gun. Even if this court were to agree, Cage's subsequent actions of reaching to the floor of the truck to retrieve the gun and firing the second time were sufficient to break any causal link between that use and the injuries inflicted.

Finally, the facts of the case fail the third part of the *Caraang* test because Pezzimenti's injuries did not result from the use of the truck for transportation purposes. The shooting was not facilitated by or motivated by anyone's use of Cage's truck. The shooting could just as easily have taken place outside the truck.

Because the incident fails not just one but all three of the enumerated factors, no reasonable fact-finder could conclude that the truck had more than a "minimal causal connection" with Pezzimenti's death. Accordingly, the Court finds as a matter of law that Pezzimenti's death did not arise out of the use, operation or maintenance of Cage's truck and, therefore, there is no coverage under Cage's policy.

## VI. *CONCLUSION*

Based on the foregoing analysis, State Farm is not obligated to either defend or indemnify Cage for bodily injury liability or no-fault coverage because Pezzimenti's injuries were neither the result of an accident from Cage's point of view nor did the injuries arise out of the use, operation, or maintenance of an automobile. Consequently, because there is no genuine issue of material fact, State Farm's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.