Concurring and Dissenting Opinion by
RAMIL, J.
With whom NAEA.YAMA, J., joins.
The Majority’s position ignores the reasonable expectations of the policyholder in interpreting the business automobile liability policy. The Majority’s holding that Nakamura’s vehicle is within the scope of coverage is based on their interpretation of the terms “USE OF OTHER AUTO[,]” “EMPLOYER’S NON-OWNED[,]” and “HIRED AUTO.” Reading these terms literally and out of context, the Majority erroneously believes that DRP reasonably expected coverage for a vehicle that was neither listed on the policy nor being used in the course of business at the time of the accident. In the process of extending coverage, the Majority strains to impose a duty to indemnify even where the facts available at the time of the motions for summary judgment precluded any possibility of coverage. In so doing, the Majority has effectively broadened the risk pool subject to coverage, which, in my view, will result in higher premium rates to the detriment of consumers. Accordingly, I dissent from section III.C of the Majority Opinion.
A. The Reasonable Expectations of the Parties
The Majority holds that there was a genuine issue of material fact with respect to Island’s duty to indemnify because the business automobile liability policy contemplates coverage in the underlying complaints. Majority at 425, 992 P.2d at 120. I disagree.[1]
It is unquestionable that in construing an insurance policy, we are committed to enforcing the objectively reasonable expectations of the parties claiming coverage, which are construed in accord with the reasonable expectations of a lay person. See, e.g., Hawaiian Ins. & Guar. Co. v. Financial Security Ins. Co., 72 Haw. 80, 87-88, 807 P.2d 1256, 1259-60 (internal quotation marks and citations omitted), reconsideration denied, 72 Haw. 616, 841 P.2d 1074 (1991); see also Estate of Doe v. Paul Revere Ins. Group, 86 Hawai'i 262, 271, 948 P.2d 1103, 1112 (1997) (quoting Dawes v. First Ins. Co. of Hawai‘i, Ltd., 77 Hawai'i 117, 121-22, 883 P.2d 38, 42-43, reconsideration denied, 77 Hawai'i 489, 889 P.2d 66 (1994) (citing Sturla, Inc. v. Fireman’s Fund Ins. Co., 67 Haw. 203, 209, 684 *429 P.2d 960, 964 (1984))). Indeed, this court has previously stated that “the objectively reasonable expectations of policyholders ... regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.” Hawaiian Ins. & Guar. Co. v. Brooks, 67 Haw. 285, 291, 686 P.2d 23, 26-27 (1984) (internal quotation marks, citation, brackets, and footnote omitted). Despite this well-settled principle that an insurance policy will be construed according to the reasonable expectations of the policyholder, the Majority ignores DRP’s objectively reasonable expectation that the business automobile liability policy would cover damages arising from the use of either: (1) one of the four vehicles specifically listed; or (2) all other vehicles that were being used for business purposes.
Unlike the Majority, I fail to see, based upon the record existing at the time of Island’s motion for summary judgment, how the business automobile policy would cover any vehicle other than the four vehicles specifically listed or other vehicles not listed that were being used for business purposes. In my view, it would have been absurd for DRP to expect Island to cover a vehicle that was owned by one of its employees and being used for purposes entirely unrelated to the garage’s business.
Although the parties failed to include “ITEM TWO” of Part II of the policy, which allegedly shows the autos that are covered autos[,]” Island’s attachments to its motion for summary judgment supported the circuit court’s conclusion that there was no genuine issue of material fact with regard to Island’s duty to indemnify even without “ITEM TWO” of the declarations. Based upon the various attachments to Island’s motion for summary judgment, it was apparent that: (1) the policy'applied only to “covered” automobiles; and (2) the vehicle driven by Nakamu-ra was not one of the four automobiles expressly covered by the policy.[2] It is also undisputed that the policy was a business automobile liability policy and was clearly designated as such.
In addition, Nakamura testified in his deposition that the accident occurred (1) some ten hours after the end of his work day, (2) while he was driving home, and (3) after having given a ride to a friend. The record reveals that there is no evidence that the consumption of alcohol that took place on the premises was sponsored by Nakamura’s employer or that the drinking would result in some benefit to the employer. In fact, Island adduced evidence that there was an unwritten policy forbidding the consumption of alcohol on the premises. Indeed, the Majority concedes that “no plausible argument could be made that Nakamura was performing ‘garage operations’ or ‘garage business’ at the time of the accident.”[3] Majority at *430 423, 992 P.2d at 118. Under these circumstances, the circuit court did not need to have “ITEM TWO of the declarations” to determine that there was no genuine issue of material fact with respect to Island’s duty to indemnify DRP.[4]
Although the policy makes reference to “USE OF OTHER AUTO[,]” “EMPLOYER’S NON-OWNED[,]” and “HIRED AUTO[,]” I fail to see how the mere reference of any of these terms could create a reasonable expectation of coverage for an employee’s personal vehicle that was being used at the time of the accident for personal use. The mere reference to terms such as “USE OF OTHER AUTO[,]” “EMPLOYER’S NON-OWNED[,]” and “HIRED AUTO[,]” could not have created an objectively reasonable expectation that the policy would cover an automobile that was neither specifically listed as a covered automobile nor being used for garage business. Therefore, I would hold that DRP did not have a reasonable expectation of coverage with respect to the business automobile liability policy.
Similarly, the mere reference to “non owned autos” does not bring Nakamura’s vehicle within the scope of coverage inasmuch as it would have been unreasonable to expect coverage of any and all “non owned autos” under the business auto policy. As discussed above, the vehicle in question at the time of the accident was an employee’s personal vehicle being used for purposes entirely unrelated to the garage’s business. Indeed, I find the Majority’s literal interpretation of the “non owned autos” language of the business auto policy absurd and strained.
Although we generally construe any ambiguities in the insurance contract against the insurer, the Majority’s overly broad construction of the words “non owned autos” in this case leads to absurdity. It is difficult to imagine that DRP reasonably expected Island to provide coverage to all “non owned autos” without regard to the ownership of the vehicles involved or the purposes for which they are being used at the time of an accident. Majority at 425, 992 P.2d at 120. Indeed, the Majority’s interpretation of the “non owned autos” language renders the potential pool of vehicles subject to coverage by Island limitless and the designation of the policy as a “business” automobile liability policy superfluous.
I do not suggest that we adopt a bright line rule that the label attached to a policy is determinative of the type and scope of cover *431 age provided. It goes without saying that a policy’s scope of coverage is determined by the objectively reasonable expectations of the parties and that the policy title does not necessarily trump whatever the coverage clause of the policy in question might provide. Majority at 425, 992 P.2d at 119-120. In this ease, however, the policy title is indicative of what the parties could have reasonably expected. Considering the language of the policy in its entirety and all of the extrinsic facts that have been adduced, the objectively reasonable expectation of DRP could only have been that Island would indemnify DRP for any damages resulting from the use of: (1) a vehicle that is specifically listed in the policy (ie., an owned vehicle); or (2) “non owned autos” that are used for business purposes. Surely, the mere reference to terms such as “USE OF OTHER AUTO[,]” “EMPLOYER’S NON-OWNED[,]” and “HIRED AUTO” could not have created an objectively reasonable expectation of coverage for all “non owned autos,” notwithstanding the purpose for which the “non owned autos” were being used. To interpret the mere mentioning of the words “non owned autos” to mean all “non owned autos” would render the scope of coverage under the business automobile liability policy virtually limitless. In my view, such a position is simply untenable.
Therefore, I would interpret the “non owned autos” language in accordance with the reasonable expectations of the policyholder as discussed above (ie., that the business automobile liability policy would cover damages arising from the use of: (1) vehicles that are specifically listed on the policy; or (2) “non owned autos” used for business purposes). Because extrinsic facts reveal that Nakamura’s vehicle was neither listed on the policy nor being used for a business purpose at the time of the accident, I would hold that Island has no duty to indemnify DRP.
B. Implications of the Majority’s Interpretation
In my view, the Majority’s interpretation of the business automobile policy blurs the potential risk pool subject to coverage that is considered in determining insurance rates. Given that a contract of insurance is an agreement in which one party (the insurer), in exchange for consideration provided by the other party (the insured), assumes the other party’s risk and distributes it across a group of similarly situated insureds, it is elementary that insurers must subdivide insureds into distinct groups with similar risks. See Robert H. Jerry, Understanding Insurance Law 13-17 (2d ed.1996). By so doing, insurers are able to distribute the risks being insured against amongst the pool of similarly situated insureds. Insurers can then set similar rates for the members of that group.
Today, despite the clear intent to limit coverage to damages arising from garage business, the Majority essentially holds that a “business” automobile insurance policy can cover damages resulting from activities unrelated to the garage’s business or its operations. Specifically, the Majority’s literal interpretation of the business automobile liability policy effectively destroys all limitations with respect to the vehicles subject to coverage under the policy. By so doing, the Majority has broadened beyond recognition the risk pool to which the insurer is obligated to provide coverage. Consequently, in my opinion, insurers will be forced to raise premium rates to the detriment of consumers in order to compensate for the broadened risk pool.
C. Conclusion
For the reasons discussed above, I dissent from section III.C of the Majority’s Opinion.

. In contrast, I agree with the majority with regard to Island’s duty to defend pursuant to the business automobile liability policy inasmuch as the allegations in the underlying complaint give rise to the possibility of coverage. Because we are confined to the allegations in the complaint in determining an insurer’s duty to defend, I agree that it is possible that the vehicle(s) mentioned in the complaint could have been ''covered" automobiles. Upon further investigation (i.e., upon considering extrinsic evidence), however, it is clear that the vehicle in question is not a covered automobile. Therefore, Island did not have a duty to indemnify with respect to the business automobile liability policy.

. The exhibits attached to Island's motion for summary judgment indicate that DRP paid premiums on the following four automobiles: (1) a 1987 "CHEV VAN”; (2) a 1991 “M/BENZ” 560 SEL; (3) a 1982 Mercedes two-door 380 SEC; (4) and a 1988 Ford Mustang LX. It is undisputed that Nakamura was not driving any of these vehicles at the time of the accident.

. In footnote 19, the Majority states that "it is possible that facts could emerge at a future trial or through additional discovery indicating that Nakamura was, in fact, using the vehicle in connection with business operations.” Ironically, however, in its discussion of the commercial garage liability policy in section III.B.2., which immediately precedes the discussion of the business automobile liability policy, the Majority correctly observes:
Nakamura testified in his deposition that the accident occurred (1) some ten hours after the end of his work day, (2) while he was driving home, and (3) after having given a ride to a friend. On these particular facts, no plausible argument could be made that Nakamura was performing "garage business” at the time of the accident.
As the Majority also notes, DRP failed to offer any evidence to rebut Nakamura’s account of the relevant events and, in fact, failed to dispute it. In addition, an investigation revealed the following information, which was presented to the circuit court for purposes of summary judgment:
[[Image here]]
b. Garth Nakamura was drinking alcohol on the premises of Dairy Road Shell from approximately 8:00 p.m. the evening before the accident, until 2:30 a.m. on the date of the accident.
c. Garth Nakamura was drinking with his friends, none of whom were employees of Dairy Road Shell.
d. The drinking event was not a company sponsored activity.
e. Mr. Glenn Nakamura, Garth Nakamu-ra’s father and a partner at [DRP], was not *430 aware of the drinking of alcohol on the premises of Dairy Road Shell, referred to hereinbe-fore.
f. Garth Nakamura was not working at the time of the accident.
g. Just before the subject accident, when Garth Nakamura left the Dairy Road Shell, he did so in his personal vehicle.
h. At the time of the subject accident, Garth Nakamura was operating his personal vehicle for a personal purpose.
As with Nakamura's account of the relevant events, DRP failed to offer any evidence to rebut the information revealed by the investigation. Under these circumstances, I fail to see how DRP can demonstrate that Nakamura’s vehicle was being used in connection with business operations, even with additional discovery or a trial.
Interestingly, the affidavit of DRP's insurance agent, Roger Yamagata, which was submitted by DRP in connection with its motions for reconsideration, indicates that the policy's coverage of "non owned vehicles” was intended by the parties to relate solely to "vehicles used in connection with business operations.” Therefore, although I do not believe that Yamagata’s affidavit is necessary to interpret the business auto policy,
I believe that additional evidence from further discovery or a trial would indicate that DRP could not have reasonably expected Island to cover a non owned vehicle that was not being used in connection with business operations.

. The Majority attempts to create an issue of fact by reasoning that "Nakamura’s father, as a part-owner of DRP, might have included Nakamura’s vehicle on the policy. Nakamura’s vehicle might have been covered as an 'employer's non-owned' vehicle.” However, as discussed, the policy sets forth four specific vehicles that are expressly covered. Ironically, the policy does not list Na-kamura’s vehicle as a covered vehicle. Had Na-kamura’s father intended to include Nakamura’s vehicle on the policy, he would have arranged to place Nakamura’s vehicle on the list of covered vehicles. Nakamura would not have relied on the mere mention of "employer’s non-owned” vehicle to provide coverage to Nakamura’s vehicle. In any event, I do not believe that Nakamu-ra could have reasonably expected the business automobile policy to cover a vehicle that he or the business neither owned nor used for business purposes at the time of the accident. Therefore, at the time of summary judgment, there was no genuine issue of material fact inasmuch as all of the relevant facts were undisputed. See supra note 3.