957 P.2d 1061

**Florencio G. BAYUDAN,
Plaintiff–Appellant,**

v.

**TRADEWIND INSURANCE COMPANY,
LTD., Defendant–Appellee.**

No. 20487.

Intermediate Court of Appeals of Hawai'i.

May 1, 1998.

Michael G.M. Ostendorp, on the briefs, Honolulu, for plaintiff-appellant.

Roy F. Hughes and James Shin, on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

█ We hold that where a third party suing an insured alleges a claim that does not raise the potential for coverage under the insured's homeowner's insurance policy, and all of the factual allegations and injuries alleged in other counts of the complaint are "unquestionably implicate[d]" in the uncovered claim, *Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger*, 934 P.2d 909, 912 (Colo. Ct.App.1997), the insurer does not have a duty to defend the insured. In this action brought by Plaintiff–Appellant Florencio G. Bayudan (Florencio) seeking a declaration that his insurer, Defendant–Appellee Tradewind Insurance Company, Ltd. (Tradewind), had a duty to defend him in a suit alleging that Florencio kidnapped, sexually assaulted, and/or raped Jennifer L. Lapina (Lapina), we conclude that Tradewind would have no duty to defend Florencio on the claims alleged in Lapina's original complaint because all of her claims and alleged injuries were inherently related to the kidnapping and assault claim, which Florencio has admitted is not covered by his insurance policy.

█ We further hold that an insurer, in determining whether the third party's action raises a potential for coverage and thus implicates the insurer's duty to defend, must investigate beyond the third party's pleadings when (1) the allegations in the pleadings should alert the insurer that there is a potential for coverage, as in *Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co.*, 65 Haw. 521, 654 P.2d 1345 (1982); (2) the allegations differ from facts the insurer knows or can readily determine; or (3) the allegations are ambiguous.

Additionally, we conclude that Tradewind's agreement to defend Florencio "even if the suit is groundless, false or fraudulent" applies only to suits, as the policy plainly states, "brought against [Florencio] for damages because of bodily injury or property damage *caused by an occurrence to which [the] coverage applies* [.]" Thus, Florencio's argument that Lapina's claims are frivolous would

not in itself require Tradewind to provide him a defense.

However, because Lapina amended her complaint to allege a "slip and fall" claim which *may* raise the potential for coverage, the August 22, 1996 order entered by the first circuit court (the court) granting Tradewind's motion for summary judgment and the January 15, 1997 final judgment in favor of Tradewind must be vacated and the question of whether the slip and fall claim raises a potential for coverage decided on remand. In that regard, we also vacate the court's October 22, 1996 order denying Florencio's motions for reconsideration and to supplement the record with the amended complaint. On remand, Florencio must be permitted to supplement the record with the amended complaint.

## I.

In November 1991, Lapina rented a room from Florencio at 938 Paaaina Street (the residence).

On January 23, 1992, Florencio allegedly "kidnapped and sexually assaulted and/or raped" Lapina.

On June 10, 1993, a judgment of conviction was entered against Florencio pursuant to his "no contest" plea to three counts of criminal sexual assault charges arising out of the January 23, 1992 incident.

On December 27, 1993, Lapina filed a civil complaint in Civil No. 93–4985–12 (the complaint) against Florencio and his wife, Elena Bayudan (Elena), (collectively the Bayudans) and unidentified Doe defendants (collectively Defendants), based on the alleged kidnapping and sexual assault.

The Bayudans tendered the defense of the complaint to their insurance company, Tradewind, under their homeowner's policy (the policy). The relevant portion of the policy relating to coverage for personal liability provides:

Section II—Liability Coverages
Coverage E—Personal Liability
If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle and defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

(Underscored emphases added; boldfaced emphases in original.)

On or about February 1, 1994, Tradewind notified the Bayudans that it would provide a defense to the complaint for Elena but it would not provide a defense for Florencio.

On December 11, 1995, Florencio filed a declaratory relief action (the action) in the court against Tradewind. The action sought a declaration that Tradewind was obligated to defend Florencio in Lapina's lawsuit.

On May 10, 1996, Tradewind filed its motion for summary judgment. In its supporting memorandum, Tradewind essentially argued that Florencio's sexual assault of Lapina was not an "occurrence" as defined by the policy, but instead, that Lapina's injuries were "expected or intended by the insured," Florencio, and thus excluded from coverage under the policy.[1]

The policy provides liability coverage for an "occurrence" and defines this term as "*an accident,* including exposure to conditions, which results, during the policy period," in "bodily injury"[2] or "property damage."

---

1. Defendant–Appellee Tradewind Insurance Company, Ltd. (Tradewind) also argued that the acts of Plaintiff–Appellant Florencio G. Bayudan (Florencio) were not covered under the homeowner's policy (the policy) of Florencio and his wife, Elena Bayudan (Elena), because the policy excluded coverage "for bodily injury arising out of the rental of any part of the insured premises, except on an occasional basis on a vacation or business trip with the intent of returning to live in the premises." On appeal, however, Tradewind does not present any argument on this point concerning claims other than the "slip and fall" claim, of Jennifer L. Lapina (Lapina), discussed *infra.*

2. "Bodily injury" is defined in the policy as "bodily harm, sickness or disease, including re-

(Emphasis added.) Exclusions to coverage under the policy include, in relevant part, as follows:

SECTION II—EXCLUSIONS

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

 a. which is expected or intended by the insured; ·

 b. arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of the premises by the **insured.**

(Underscored emphases added; boldfaced emphases in original.)

On July 30, 1996, Florencio filed his opposition to Tradewind's motion for summary judgment. At a hearing the following day, the court orally granted the motion. On August 20, 1996, Florencio filed a motion for reconsideration of the court's oral order granting summary judgment.

On August 22, 1996, the court filed its written order granting Tradewind's motion for summary judgment.

Eight days later, Lapina moved the court to amend her complaint. The primary amendment concerned the addition of a new count alleging a "slip and fall" claim. The court granted Lapina's motion on September 17, 1996.

Thereafter, on September 25, 1996, Florencio filed a motion to supplement the record with Lapina's amended complaint. On October 2, 1996, Tradewind filed its opposition to Florencio's motion to supplement.

On October 22, 1996, the court issued an order denying Florencio's motions for reconsideration and to supplement. The court entered final judgment in favor of Tradewind on January 15, 1997.

Florencio appeals the August 22, 1996 order granting Tradewind's motion for summary judgment, the October 22, 1996 order denying Florencio's motions for reconsideration and to supplement the record, and the January 15, 1997 final judgment.

quired care, loss of services and death that re-

## II.

A summary judgment order is reviewed on appeal under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting,* 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Consequently, we must determine whether viewing all the evidence in a light most favorable to the nonmoving party, there is no genuine issue as to any material facts and the moving party has clearly demonstrated that it is entitled to judgment as a matter of law. *Id.;* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c).

### A.

The following facts were admitted by Tradewind in its answer to the complaint: (1) Lapina filed a complaint against Florencio in 1993; (2) the complaint alleged that "on or about January 2[3], 1992, [Florencio] intentionally and negligently committed sexual assault and battery upon [Lapina] in the insured's home"; (3) "[c]ommencing on or about August 16, 1994, [Florencio] and his attorneys repeatedly tendered the defense of the lawsuit to Tradewind"; (4) "Tradewind repeatedly refused and continue[d] to refuse" Florencio's tender of defense; (5) Tradewind issued a homeowner's insurance policy to Florencio, and it was in effect at the time described in the complaint; and (6) Tradewind denied coverage and defense of Florencio on the complaint.

### B.

■ With respect to the parties' summary judgment exhibits, we note that none of the exhibits submitted by Tradewind were properly sworn to or certified. Tradewind submitted the following exhibits: Exhibit A, a copy of portions ·of Lapina's deposition; Exhibit B, a copy of the police records regarding Florencio from the Honolulu Police Department; Exhibit C, a copy of the complaint entitled, "Jennifer L. Lapina v. Florencio Bayudan, et al.," Civil No. 93–4985–12; and Exhibit D, a copy of policy. *See Fuller v. Pacific Medical Collections,* 78 Hawai'i 213,

sults."

891 P.2d 300 (App.1995) (holding that mere statements in affidavits referring to exhibits do not authenticate exhibits referred to unless affidavit indicates affiant was qualified to swear to or certify exhibits).

Florencio submitted three exhibits. Florencio's Exhibit A, a copy of additional portions of Lapina's deposition, was not properly certified. Florencio's Exhibits B and C were in proper form. Florencio's Exhibit B was an affidavit of Florencio denying he "committed any intentional tortious act on January 2[3], 1992, as alleged by [Lapina]." Florencio's Exhibit C was an affidavit by Elena stating she did not hear or observe any struggle between Florencio and Lapina on January 23, 1992, although she was "in a position to hear or observe such events."

We consider all the exhibits because they were not objected to by any party and were referred to by both parties in their court memoranda. *Tradewind Ins. Co. v. Stout*, 85 Hawai'i 177, 181, 938 P.2d 1196, 1200 (App. 1997).

### III.

The primary issue on appeal is whether the court erred in concluding that Tradewind was entitled to judgment as a matter of law because it was not obligated to defend Florencio against Lapina's claims. This issue requires us to consider when an insurer has a duty to defend its insured in an action brought by a third party.

### A.

■ "The insurer's duty to defend its insured is contractual in nature[.]" *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 325, 832 P.2d 733, 735, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992). The duty to defend "arises whenever there is the mere potential for coverage[,]" *id.*, and thus does not depend on whether or not liability is ultimately established:

> The duty to defend is not contingent on actual liability as determined by the results of trial. The duty to defend is not outcome-determined but merely depends on a potential for coverage and is deter-

mined at the time the suit is brought and not at the conclusion of litigation. An insurer's ultimate non-liability should not free it from its concurrent contractual duty to defend.

*Id.* at 327, 832 P.2d at 736 (internal quotation marks, brackets, and citations omitted).

The instant insurance policy is apposite. Here, Tradewind contracted that "[i]f a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** ... caused by an **occurrence** to which this coverage applies," Tradewind would "pay up to [its] limit of liability for the damages for which the **insured** is legally liable" and "provide a defense ... even if the suit is groundless, false or fraudulent." (Underscored emphases added; boldfaced emphases in original.) From these provisions, it is evident that Tradewind undertook a duty to defend broader than its duty to indemnify. *Commerce*, 73 Haw. at 326, 832 P.2d at 735.

It is also the rule in our jurisdiction that " 'where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.' " *Id.* at 326, 832 P.2d at 736 (quoting *First Ins. Co. of Hawaii v. State*, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983)).

To determine if it has a duty to defend, an insurer must first examine the allegations made in the pleadings submitted in the underlying lawsuit against the insured, and then compare those allegations with the insurance policy terms. This is because "[t]he duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract." *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994). The Hawai'i Supreme Court has repeatedly affirmed that "[w]here pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Id.* (internal quotation marks and citations omitted) (emphasis added).

## B.

■ The supreme court has also held, however, that insureds "ha[ve] a right to expect that their insurance company [will] make a determined effort to ascertain *not only from the pleadings but also from the insurer's own independent investigation* whether the insured[s] were entitled to defense representation under [a] policy." *Standard Oil*, 65 Haw. at 527, 654 P.2d at 1349. This "investigation" must be extensive enough to acquire any "reasonably ascertainable" information pertinent to the insurer's duty to defend:

> "[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. . . . [*T*]*he duty to defend rests primarily on the possibility that coverage exists.* This possibility may be remote, but if it exists the company owes the insured a defense. *The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation.*"

*Id.* (quoting *Spruill Motors, Inc. v. Universal Under. Ins. Co.,* 212 Kan. 681, 512 P.2d 403, 407 (1973)) (emphases added). *See also Hawaiian Ins. & Guar. Co. v. Blanco,* 72 Haw. 9, 15–16, 804 P.2d 876, 879–80 (1990) (quoting the above portion of *Standard Oil*); 1 R. Long, *The Law of Liability Insurance* § 5.02[1], at 5–16 n. 7, § 5.02[2][b], at 5–16.4 to 5–17 n. 15 (M. Bender 1997) ("[A] number of jurisdictions now hold that the insurer must look beyond the allegations of the complaint in determining the duty to defend.") (citing *Standard Oil*).

The Supreme Court of Washington has further explained the circumstances under which the insurer must investigate and look beyond the allegations in the pleadings to determine its duty to defend. *See E–Z Loader Boat Trailers v. Travelers Indem. Co.,* 106 Wash.2d 901, 726 P.2d 439, 443–44 (1986). It held that an insurer "is required to look beyond the allegations of the complaint if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate." *Id.,* 726 P.2d at 444. The latter situation appears to have been the basis for the Hawai'i Supreme Court's decision in *Standard Oil.* In that case, the insurer had received complaints filed against its insureds, which alleged that the insureds were negligent in "servicing" and "in failing to detect removable blockages and obstruction to the flow of fuel into the [airplane] engines[.]" *Standard Oil,* 65 Haw. at 526, 654 P.2d at 1348–49 (emphases omitted). It was held that although the refueler truck operated by the insureds was not specifically mentioned in the complaint, "[t]he foregoing should have alerted [the insurer] to the possibility that the refueler truck which was covered by its policy might have been involved." *Id.* at 526–27, 654 P.2d at 1349. Because those "allegations should have alerted [the insurer] to the possibility of coverage under its policy[,]" the supreme court rejected the insurer's contention that it had no duty to defend on the ground that it was not properly notified by its insureds. *Id.* at 522, 527, 654 P.2d at 1346, 1349.

In two cases decided after *Standard Oil,* the supreme court apparently allowed insurers to look to facts gleaned from sources other than the pleadings as a basis for refusing to defend. In *Hawaiian Ins. & Guar. Co. v. Brooks,* 67 Haw. 285, 286–87, 686 P.2d 23, 24–25 (1984), the complaint against the insured alleged that he was negligent. On the basis of an affidavit submitted by the insured, the supreme court concluded that there was no "accident that resulted in bodily injury neither expected nor intended" and, "[s]ince a potential for indemnification liability of insurer to insured never existed[,]" the insurer had no duty to defend. *Id.* at 292, 686 P.2d at 28. Similarly, in *Blanco,* although the complaint alleged injury resulting from a potentially negligent act of the insured, the supreme court examined a police report indicating that the act referred to was intentional, and thus concluded the insurer had no duty to defend. *Blanco,* 72 Haw. at 17–18, 804 P.2d at 880–81. Therefore, while *Brooks* and *Blanco* did not require insurers to investigate beyond facts alleged in the pleadings, both cases permitted an insurer to

reject an insured's tender of defense on the basis of facts obtained from the investigation.

## IV.

With the foregoing principles in mind, we address Florencio's arguments concerning Tradewind's alleged duty to defend him in the action brought by Lapina. As set forth above, Tradewind was first required to examine the allegations in Lapina's complaint and compare them to the policy language to determine whether a potential for coverage existed, and thus whether Tradewind had a duty to defend Florencio.

## A.

In count I of the complaint, Lapina alleged that "[o]n or about January 23, 1992, [Florencio] kidnapped and sexually assaulted and/or raped [Lapina]" and that "[a]s a legal and proximate cause of the negligence, actions, and/or omissions of [Defendants], [Lapina] suffered bodily injuries, mental anguish, pain of body and mind, emotional distress and has been permanently injured[.]"

■ At the summary judgment hearing, Florencio's counsel stated that "my client is being sued for ... intentional and tortious acts. And the allegation is that it was a sexual assault." On appeal, Florencio states that "all of Lapina's claims *except for the alleged assault and kidnapping claim* [in count I] fall within the 'occurrence' language

of the policy." (Emphasis added.) Florencio thus admits that the alleged assault and kidnapping claim in count I did *not* fall within the occurrence language of the policy.[3] Since coverage is provided only for bodily injury or property damage caused by an occurrence for which Florencio would be legally liable, no coverage would be provided for Lapina's alleged injuries resulting from the assault and kidnapping. As it has been noted, "[w]here pleadings fail to allege any basis for recovery within the coverage clause the insurer has no obligation to defend." *Commerce*, 73 Haw. at 326, 832 P.2d at 736 (internal quotation marks and citations omitted). Hence, if the only claim contained in Lapina's complaint were the assault and kidnapping claim in count I, then Tradewind would have no duty to defend Florencio.[4]

## B.

However, Florencio argues that the other counts of the complaint alleging negligence "raised a potential for coverage and/or indemnification liability" and thus Tradewind had a duty to defend Florencio on Lapina's entire suit.[5] As we have indicated, where any claim in an action raises the potential for coverage, an insurer "has a duty to accept the defense of the entire suit even though the other claims of the complaint fall outside the policy's coverage." *Commerce*, 73 Haw. at 326, 832 P.2d at 736. But we do not believe that this principle applies here because the

3. On appeal, Florencio does not refer to the allegation in count I that he raped in addition to committing sexual assault and kidnapping. It may be assumed, however, that he also concedes *that that allegation refers to an intentional act*, since he does not assert it falls within the category of "accidental" claims he argues were covered by the policy.

4. Because Florencio has admitted that the assault and kidnapping would not fall within the definition of "occurrence" in the policy, and, thus, injuries resulting therefrom would not be covered, we need not address Tradewind's argument that these claims would not be covered on the basis of an "inferred intent" rule. Florencio's admission renders irrelevant the question of Florencio's intent and the applicability of the intentional acts exclusion.

5. Florencio argues that the second, third, and fourth counts of Lapina's complaint raised a

potential for coverage. According to the complaint, counts II through IV alleged, respectively, a breach of a duty to provide a safe place at the residence, a breach of an express or implied warranty *that the residence was safe, and the* negligent and/or intentional failure to warn Lapina of Florencio's "pattern" of kidnapping and sexual assault. Count V alleged the intentional and/or negligent infliction of emotional distress. In discussing what he terms to be counts II through IV, Florencio apparently also includes count V, but does not specifically discuss the failure to warn claim in count IV. Because of this confusion, our discussion will address counts II through V of Lapina's complaint.

Florencio also argues that the second, third, and fifth counts of the amended complaint raised a potential for coverage and thus triggered Tradewind's duty to defend him. We address claims alleged in the amended complaint *infra*.

other counts of Lapina's complaint did not raise the potential for coverage under the policy.

### 1.

■ According to Tradewind, "Lapina's claim[s] of negligence, breach of warranty, intentional infliction of emotional distress and negligent infliction of emotional distress are not covered since these claims are inextricably tied in with the allegations of sexual assault."

Reviewing the complaint's counts, it would appear Tradewind's position is meritorious. The following counts are set forth in their entirety.

### COUNT II

13. [Lapina] repeats and realleges the allegations contained in paragraphs 1 through 12 above as though herein fully set forth;

14. Defendants had a duty to provide a safe place at the [r]esidence for [Lapina] to live;

15. The [r]esidence was in an unsafe condition at the time it was provided to [Lapina] by Defendants;

16. Defendants *breached their duty to provide a safe place at the [r]esidence for [Lapina], causing [Lapina] to suffer injuries and damages[.]*

(Emphasis added.) As to count II, the allegation of Defendants' failure to provide a "safe place" in the context of the complaint could refer only to the "unsafe condition" of subjecting Lapina to the kidnapping and assault alleged in count I.

### COUNT III

21. [Lapina] repeats and realleges the allegations contained in paragraphs 1 through 20 above as though herein fully set forth;

22. Defendants expressly and/or impliedly warranted that the [r]esidence was safe;

23. *Defendants breached said express and/or implied warranty of safety and habitability, causing [Lapina] to suffer injuries and damages[.]*

(Emphasis added.) Like count II, the alleged breach of any warranty of safety and "habitability" in count III could relate only to the kidnapping and assault.

### COUNT IV

28. [Lapina] repeats and realleges the allegations contained in paragraphs 1 through 27 above as though herein fully set forth;

29. Defendants and/or their agents were aware of [Florencio's] pattern and/or history of kidnapping and sexually assaulting female tenants and/or guests at the [r]esidence;

30. *Defendants negligently and/or intentionally failed to warn [Lapina] of [Florencio's] patter [sic] of kidnapping and sexually assaulting female tenants and/or guests at the [r]esidence, causing [Lapina] to suffer injuries and damages[.]*

(Emphasis added.) As to count IV, the alleged failure to warn Lapina relates, again, to the kidnapping and sexual assault.

### COUNT V

35. [Lapina] repeats and realleges the allegations contained in paragraphs 1 through 34 above as though herein fully se [sic] forth;

36. Defendants, *by engaging in the above-described acts, intentionally and/or negligently inflicted emotional distress* upon [Lapina], causing [Lapina] to suffer injuries and damages;

37. As a legal a[sic] proximate cause of the negligence, actions, and/or omissions of ... Defendants, [Lapina] suffered bodily injuries, mental anguish, pain of body and mind, emotional distress and has been permanently injured[.]

(Emphasis added.) As to count V, any emotional distress would be related to the previously pled acts of kidnapping and assault.[6]

---

6. Count VI is a count for punitive damages based on the preceding counts.

**2.**

The only facts alleged in Lapina's complaint to support her claims in counts II through V relate to the alleged `kidnapping and assault claims in count I. In our view, the mere recasting of these facts under various counts does not raise a potential for coverage under counts II through V, and thus Tradewind had no duty to defend against the original complaint.

The instant case is similar to the facts of *Snowbarger.* In that case, the victim of a sexual assault sued the insured, alleging claims of, *inter alia,* sexual assault, battery, extreme and outrageous conduct, breach of fiduciary duty, and negligent infliction of emotional distress. *Snowbarger,* 934 P.2d at 910. The insured's homeowner's insurance policy contained a coverage exclusion for intentional acts committed by the insured. *Id.* Because intent to injure was inferred as a matter of law [7] and because intent had been established by the insured's guilty plea in a prior criminal action for sexual assault of the victim, the sexual assault claim was presumed to be outside the scope of coverage under the policy. *Id.* at 911.

The Colorado Court of Appeals observed that when both negligent and intentional torts are alleged in a complaint, "the allegations of negligence do not necessarily invoke the duties of the insurer to defend ... the insured under a homeowner's policy which incorporates an intentional torts exclusion provision." *Id.* It then concluded that the insurer had no duty to defend because there were no factual allegations to support a negligence claim in the complaint:

> A duty to defend arises when the underlying complaint alleges any facts that might fall within the coverage of the policy. *However, here, the only facts recited in the complaint concern the repeated acts of sexual assault. There are no factual allegations provided in the complaint to substantiate a negligence theory or any other theory which might otherwise fall within*

*the coverage of the policy.* Hence, since the complaint fails to allege any facts that might fall within the coverage of the policy, [the insurer] has no duty to defend.

*Id.* at 912 (emphasis added). Moreover, "[s]ince the factual allegations in [the] complaint unquestionably implicate the intentional acts exclusion of the insurance policy, [the insurer] had no duty to defend or indemnify." *Id.*

Other courts have agreed that the mere relabeling of a claim for which coverage is excluded to a claim which could raise the potential for coverage is not a permissible manner in which to trigger an insurer's duty to defend. For example, in *Allstate Ins. Co. v. S.F.,* 518 N.W.2d 37, 39–40 (Minn.1994), the Supreme Court of Minnesota rejected the argument that a complaint alleging sexual assault and negligence precipitated an insurer's duty to defend and indemnify the insured. In addition to the allegation of sexual assault, the complainant alleged, similar to Lapina's count V, that the insured entered her home and "placed her in a zone of danger of physical impact, and, as a result, [she] suffered the negligent infliction of emotional distress." *Id.* at 40 (internal quotation marks and citation omitted). The Minnesota court held that such claims did not invoke the insurer's duty to defend, because "[they] ... amount[ed] to nothing more than a claim that the [defendant and two others] entered [the] plaintiff's home to assault her sexually; in other words, [these] allegation[s] [are] just a variation of the intentional assault claims, which are barred by the intentional act exclusion." *Id.* See also *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 216–17, 846 P.2d 792, 798–99 (1993) (holding that, although in that case the plaintiff's allegations of sexual molestation and other misconduct were not "inseparably intertwined", "[w]e do not sanction relabelling child molestation as negligence in order to secure insurance coverage for the plaintiff's injuries").[8]

---

7. The Colorado court noted that "[i]n cases such as this, intent to harm is inferred as a matter of law when the defendant has engaged in sexual misconduct with a child." *Colorado Farm Bu-*

*reau Mut. Ins. Co. v. Snowbarger,* 934 P.2d 909, 911 (Colo.App.1997).

8. Some courts have approached this issue from a causation perspective. In *Allstate Ins. Co. v.*

### 3.

■ Additionally, we note that the *injuries* that Lapina describes in her complaint are all rooted in the allegations of kidnapping and assault. In a similar context, the Colorado court in *Snowbarger* concluded that the insurer "had no duty to indemnify [or defend ·in that case for the additional reason that] the *damages* claimed as a result of [the insured's] negligence actually stemmed directly from the sexual assaults which fall within the intentional acts exclusion of the · policy." *Snowbarger*, 934 P.2d at 912 (emphasis added). Likewise, the Wyoming Supreme Court has also concluded that an insurer's duty to defend is not triggered by labeling one claim in a complaint "negligence" when "the facts in the complaint do not demonstrate alleged loss resulting from negligence or alleged loss 'caused by an occurrence,' but instead demonstrate alleged *losses*" for which there was no duty to defend. *First Wyoming Bank v. Continental Ins. Co.*, 860 P.2d 1094, 1098 (Wyo.1993) (emphasis added).

### C.

For these reasons, we conclude that none of the counts in Lapina's original complaint raised the potential for coverage.

### V.

Relying on *Standard Oil*, Florencio further argues that "Tradewind had a duty to conduct a good faith investigation and analysis into the facts before it denied [Florencio] a defense." Florencio then asserts that Tradewind did not conduct a "good faith investigation" and thus erroneously denied Florencio

*Mauldin*, 869 F.Supp. 478, 479 (W.D.Tex.1994), the parents of a minor child sued the defendant for the sexual molestation of the child, alleging "alternative theories of intentional misconduct and [negligent] failure to obtain treatment for pedophilia." The parents conceded that the defendant's intentional acts were excluded from his homeowner's insurance policy, absolving the insurer of any duty to defend or indemnify the defendant. *Id.* at 479. The parents maintained, however, that the defendant's negligent failure to obtain treatment was a concurrent cause of their child's injuries and thus the intentional and negligent acts created an issue of fact as to the cause of the damages. *Id.*

a defense. These contentions do not alter our prior conclusion.

### A.

Florencio asserts that, in *Blanco*, the supreme court "recognized that an intentional acts exclusion can only be applied to bar an insured's right to a defense if and only if an investigation shows intent on the part of the insured." We believe that this statement misinterprets *Blanco*. In that case, the supreme court discussed its holding in *Brooks*, commenting that "since an investigation of the facts [in *Brooks* ] would have revealed that [the .insured committed an intentional act for which the policy did not provide coverage], there was no duty on the part of the insurer to defend the particular insured." *Blanco*, 72 Haw. at 16, 804 P.2d at 880. As we have explained previously, the insurers in *Brooks* and *Blanco* were *permitted* to use facts obtained in their investigations to deny a defense to their insureds based on the intentional acts exclusion, even though the pleadings had alleged claims that would not ostensibly fall within such an exclusion. Neither case *required* an insurer to undertake an investigation of the insured's intent before denying a defense based on this exclusion.

■ An investigation by the insurer was required in *Standard Oil* when, according to the supreme court, the allegations in the complaint "should have alerted [the insurer] to the possibility of coverage under its policy." *Standard Oil*, 65 Haw. at 527, 654 P.2d at 1349. As a further elucidation of this duty we concur that an investigation beyond the pleadings is required when the allegations made in the pleadings differ from facts

The District Court defined "concurrent causation" as occurring "where two separate and independent acts or instrumentalities—one covered and the other excluded by the policy—concurrently cause an injury." *Id.* (citing *Duncanville Diagnostic Center v. Atlantic Lloyd's Ins. Co. of Texas*, 875 S.W.2d 788 (Tex.Ct.App.1994)). It then ruled that the insurer had no duty to defend or indemnify the defendant because his allegedly negligent failure to obtain treatment for pedophilia was not an "independent cause[ ]-in-fact of the minor child's injuries." *Id.* at 480.

"known to or readily ascertainable by the insurer" or when the allegations are "ambiguous or inadequate." *E–Z Loader*, 726 P.2d at 443–44.

## B.

Except for the allegations in counts II through V, which we have determined are mere reallegations of the admittedly uncovered claim in count I, Florencio does not point to any allegations in Lapina's complaint that "should have alerted" Tradewind of potential coverage under the policy. Likewise, he also fails to cite any "ambiguous or inadequate" allegations which would require an investigation. Instead, Florencio argues that there were genuine issues of material fact about the alleged assault which "discredited the truth of Lapina's claims" and that "to anyone who did more than a cursory investigation, these claims were frivolous[.]" Thus, Florencio appears to argue that the facts alleged in the complaint were in conflict with facts "readily ascertainable" by Tradewind.

In a statement of facts attached to his summary judgment memorandum, Florencio cited the police interview with Lapina to contend that (1) Lapina did not sustain any injuries from the alleged assault; and (2) Elena and Lapina's roommate, only "ten feet" away from where the alleged incident occurred, did not hear anything.[9] He also maintains that Tradewind did not investigate the nature and extent of Lapina's injuries. Relying on the policy provision obligating Tradewind to "provide a defense at [its] expense by counsel of [its] choice, *even if the suit is groundless, false or fraudulent* [,]" Florencio points to these "inconsistencies in Lapina's story"[10] to demonstrate that her assault claim was frivolous. (Emphasis added.)

Florencio misapprehends this policy provision. The provision clearly does not mean that an insurer is obligated to defend a suit *because* it is allegedly frivolous; rather, the provision obligates an insurer to defend a suit "*[i]f* a claim is made or a suit is brought against an insured for damages because of bodily injury … *caused by an occurrence to which [the] coverage applies*" even if the suit is "groundless, false or fraudulent." (Emphases added.) "The duty to defend 'groundless' claims is not extended without limit and requires a defense of only those claims covered by the policy." 7C J. Appleman, *Insurance Law and Practice* § 4684, at 88 (Berdal ed.1979) [hereinafter *Insurance Law and Practice*] (footnote omitted); *see also Chipokas v. Travelers Indem. Co.*, 267 N.W.2d 393, 394, 396 (Iowa 1978) (holding that a duty to defend any suit against the insured "seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent" "does not import a duty to defend where there is no claim within the liability coverage"); *McGaughey v. St. Paul Fire & Marine Ins.*, 88 Or.App. 181, 744 P.2d 598, 599–600 (1987) (construing a duty to defend suits "for covered claims, even if the suit is groundless or fraudulent" to mean that the insurer had no duty to defend a suit, even if groundless, unless the claim would be covered under the policy). Since the assault claim is not within the occurrence language, as we have explained, it is not covered even assuming the claim was groundless.

9. Florencio cited the police interview with Lapina for his contention that Elena and Lapina's roommate "were only 10 feet away at the time of the alleged assault [yet] heard nothing and saw nothing." In fact, this contention appears to mischaracterize the interview transcript. Lapina estimated 10 feet to be the distance between the garage, where the alleged assault occurred, and the house. She told the police that Elena and Lapina's roommate were in the kitchen *inside* the house. It is not clear from the interview how far the garage was from the kitchen. Elena's affidavit, also cited by Florencio, merely states that she did not hear or see any "screaming or struggle" between Florencio and Lapina, "although [Elena] was in a position to hear or observe such events."

10. In addition to the two "inconsistencies" noted above, Florencio also represents that he pointed out to the court that (1) Lapina first alleged that, after the assault, she walked past Elena and Lapina's roommate, and then later alleged that she ran from Florencio to the bathroom; and (2) "Lapina never mentioned the slip and fall claim in her statement to the police, and did not amend her complaint to add this claim until about two years later." We cannot discern where Florencio brought these two "inconsistencies" to the attention of the court.

We observe that this is a different factual situation than the one suggested by *Horace Mann*, 17 Cal.Rptr.2d 210, 846 P.2d at 798, cited by Florencio. The California Supreme Court stated that "if facts known to the insurer suggest a possibility that what plaintiff alleges to be [intentional] sexual molestation may be found to be merely a negligent touching, then there is potential coverage and consequently a duty to defend." *Id.* Here, Florencio does not point to any facts showing that his alleged assault of Lapina was "negligent." Accordingly, Tradewind had no duty to defend Florencio on this claim, even if Florencio contends that it is frivolous.

### C.

Moreover, Florencio does not point to any facts which Tradewind could have obtained in an investigation and which would have raised the potential for coverage.[11] Therefore, we are not persuaded that Tradewind had a duty to defend Florencio against the original claims.

### VI.

 In his reply brief, Florencio argues that the question of whether injury resulted from an intentional act of the insured must be determined from the insured's perspective. Since Florencio denies that the kidnapping and sexual assault took place, from his perspective, the injuries suffered by Lapina were "not the expected or anticipated result of any intentional act or omission on his part"; hence, defense and indemnification were not precluded.

Florencio relies on *AIG Hawaii Ins. Co. v. Caraang*, 74 Haw. 620, 636, 851 P.2d 321, 329 (1993) for the proposition that "whether an injury is caused by . . . an insured's intentional act is determined from the viewpoint or perspective of the insured."[12] In *Caraang*, the plaintiffs filed a tort claim against Ilmar Godinez (Godinez) for the bodily injury to and death of the plaintiffs' son. *Id.* at 625, 851 P.2d at 325. Under Godinez's parents' automobile insurance policy, the insurer agreed to pay damages for bodily injury resulting from any "auto accident" for which an insured became legally responsible. *Id.* at 624, 851 P.2d at 324. An intentional act exclusion was included in the policy, precluding the payment of damages if the insured intentionally caused the bodily injury. *Id.*

We do not believe *Caraang* is of any aid to Florencio. In *Caraang*, Godinez's contention that he did not intentionally cause bodily injury did not defeat the "potential for indemnification liability of the insurer to the insured." *Hawaiian Holiday*, 76 Hawai'i at 169, 872 P.2d at 233. Rather, such contention meant that the injury resulted from an "accident" and raised the potential for coverage, thus implicating the insurer's duty to defend. In this case, Florencio's claim that the alleged intentional acts did not happen does not raise the potential for coverage for any of Lapina's claims. As there would be

---

11. Citing *Hawaiian Ins. & Guar. Co. v. Blanco*, 72 Haw. 9, 17, 804 P.2d 876, 880 (1990), Florencio maintains that Tradewind could not rely solely on his no contest plea in refusing to defend him. In *Blanco*, the complaint against the insured alleged that he intentionally *or* negligently fired a rifle at the plaintiff. *Id.* at 12, 804 P.2d at 878. By alleging negligence, the complaint on its face raised the potential for coverage and thus implicated the insurer's duty to defend. It was in this context that the supreme court held that "a plea of no contest, by the weight of authority, cannot be used against the person making it as an admission in any civil suit for the same act" and therefore determined that the insurer "could not rely solely on the conviction in refusing to defend." *Id.* at 17, 804 P.2d at 880.

Initially, we note that we cannot discern where in the record it is demonstrated that Tradewind relied on the no contest plea. We note, further,

that in any event, Tradewind did not need to rely on Florencio's no contest plea or any other evidence to deny a defense to Florencio on the allegations in Lapina's original complaint, because we have held that that complaint contained only allegations which would not raise a potential for coverage under the policy. In addition, since Florencio has admitted on appeal that the assault claim is not within the occurrence language of the policy, that claim does not raise a potential for coverage and any prior reliance by Tradewind on the no contest plea would have been irrelevant.

12. In *AIG Hawaii Ins. Co. v. Caraang*, 74 Haw. 620, 851 P.2d 321 (1993), the supreme court relied in part on *Hawaiian Ins. & Guar. Co. v. Brooks*, 67 Haw. 285, 686 P.2d 23 (1984), where it was noted that the *"objectively reasonable* expectations of an intended beneficiary of an insurance contract" must be honored. *Brooks*, 67 Haw. at 292, 686 P.2d at 28 (emphasis added).

no potential for coverage, Tradewind would still have no duty to defend on the assault and kidnapping claim and the related claims in Lapina's original complaint.

## VII.

Florencio maintains that granting summary judgment violated public policy because Tradewind "breached its duty to defend [Florencio] and breached its duty to investigate the facts behind Lapina's claims." This argument is conclusory and rests on an analysis of whether Tradewind did indeed breach a duty owed to Florencio. We have determined that no such duty was breached.

## VIII.

■■■ Lastly, we consider the effect of Lapina's amended complaint on Tradewind's duty to defend. Florencio appealed the denial of his motions for reconsideration and to supplement the record, arguing specifically on appeal that the court erred in denying his request to supplement the record with the amended complaint. Based on the record before us, we believe that the court erred in not permitting Florencio to supplement the record, to the extent that the slip and fall claim may raise a potential for coverage and thus implicate Tradewind's duty to defend.

## A.

The chief amendment in the amended complaint was to count II,[13] which stated in its entirety:

13. Florencio was the only named defendant in the amended complaint; Elena and the Doe defendants were no longer named as defendants. Lapina amended count I to allege that Florencio sexually assaulted her, but did not mention the alleged kidnapping or rape. Lapina also amended count I to specify that she was a tenant of the building owned and managed by Florencio. No count of the amended complaint referred to the prior claims concerning a breach of the duty to provide a safe place or the failure to warn Lapina of Florencio's alleged pattern of committing sexual assault.

14. Florencio claims that Tradewind did not preserve its latter two arguments for appeal because

*COUNT II*

8. *[Lapina] repeats and realleges the allegations contained in paragraphs 1 through 7 above as though herein fully set forth;*

9. [Florencio] owed [Lapina] a duty to exercise reasonable care to eliminate dangers and defects in those areas of the described premises used by [Lapina].

10. On or about January 23, 1992, [Lapina] was running into the bathroom area of the premises, when she fell, or was caused to fall.

11. *[Florencio] knew or should have known that his actions[ ] created an unreasonable risk of harm to [Lapina].*

12. [Florencio] failed to take any action to eliminate the danger created by [Florencio], and as a direct and proximate result of [Florencio's] breach of duty, [Lapina] suffered physical injuries in an amount to be proven at trial.

(Emphases added.)

Tradewind argues, alternatively, that the slip and fall claim was "inextricably tied in with the sexual assault," or excluded under the "business pursuits" exclusion of the policy, or barred under the statute of limitations. We address only the first of these contentions.[14]

The slip and fall claim in the amended complaint appears to relate, as do the other counts discussed *supra*, to the same factual allegations as the first count alleging sexual assault. Count II alleges that Florencio owed Lapina a "duty to exercise reasonable care to eliminate dangers and defects in those areas of the described premises used

it did not present them to the court. This appears to be true for the business pursuits exclusion argument, but Tradewind did argue before the court that the slip and fall claim was barred by the statute of limitations.

The court allowed Lapina to amend her complaint before the court decided Florencio's motion for reconsideration. We observe that if the court had decided on the motion that Tradewind had a duty to defend Florencio on the slip and fall claim, then it would have been Tradewind's responsibility to raise the statute of limitations defense in Florencio's answer to the amended complaint. Thus, we do not consider Tradewind's statute of limitations argument here.

by [Lapina]." The next allegation is that Lapina was running into the bathroom on the day of the alleged assault "when she fell, or was caused to fall." Although the intended implication appears to be that some "danger" or "defect" in the premises caused this fall, this is far from explicit. Furthermore, the other allegations in count II can be read to contradict this implication. Lapina alleged that Florencio's "*actions* [ ] created an unreasonable risk of harm" to her, and that Florencio "failed to take any action to eliminate the danger *created by [him]*." (Emphases added.) These allegations can easily be interpreted to refer to Florencio allegedly committing the assault, not to Florencio being responsible for a defective condition in the bathroom of the premises.

Portions of Lapina's deposition testimony cited by Tradewind tend to support this interpretation. Lapina affirmed that she fell in the bathroom after she "got away" from Florencio:

Q. When did you fall in the bathroom?

A. The first time I ran in.

Q. So you hurt it that night. After you got away from [Florencio] or left him, you ran in and you fell in the bathroom?

A. Yes.

Q. Okay, and you hurt it then?

A. Yes.

Lapina also testified that she fell because she was "scared and nervous":

Q. Okay. What exactly happened? I mean, why did you fall?

A. Because I was scared and nervous.

Q. I mean, did you slip on something or—

A. I don't know what I slipped on. I just ran in the bathroom and fell and slammed the door.

If Lapina fell solely because she was scared and nervous from the alleged assault, then the slip and fall claim would fail to trigger Tradewind's duty to defend for the same reason that Lapina's other claims failed to do so.

We observe that Lapina moved to amend her complaint to include the slip and fall claim, which on its face may raise a potential for coverage, eight days *after* the court entered its written order granting summary judgment in favor of Tradewind. The timing of her motion to amend, when combined with the vague allegations in the slip and fall claim and the above deposition testimony, lend some credence to Tradewind's argument before the court that Lapina again attempted "to relabel an intentional act as negligence in order to secure insurance coverage." We are constrained to observe that we do not contemplate that numerous amendments to complaints or recasting of allegations in an attempt to secure coverage is the normal practice in this jurisdiction, particularly in view of the HRCP Rule 11 [15] strictures imposed on pleadings.

### B.

However, we bear in mind that the supreme court has held that if a complaint alleges facts which *might* raise a potential for coverage, then the insurer must at least initially defend:

Between the maxim that the duty to defend arises when there is a potential for covered liability and the maxim that there is no duty to defend when there is no potential for coverage, courts have oft

---

**15.** Hawai'i Rules of Civil Procedure Rule 11 provides, in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his [or her] individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his [or her] pleading, motion, or other paper and state his [or her] address.... The signature of an attorney or party constitutes a certificate by him [or her] that he [or she] has read the pleading, motion, or other paper; that to the best of his [or her] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

quoted the following rule enunciated by Judge Learned Hand:

> It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover.

"An insurer has a duty to proceed in defense of a suit, at least to the point of establishing that liability upon which plaintiff was relying was not covered by the policy, and not merely that it might not be."

*Commerce,* 73 Haw. at 326–27, 832 P.2d at 736 (quoting *Lee v. Aetna Cas. & Sur. Co.,* 178 F.2d 750 (2d Cir.1949) and *Insurance Law and Practice* § 4683.01, at 69 (footnote omitted)).

As we have noted, the implication that was apparently intended by count II of the amended complaint was that a defect in the bathroom caused Lapina's fall, rendering her fall an "occurrence" which implicated coverage. The allegations in count II are phrased broadly, and may raise the potential for coverage. In light of the foregoing principles, we conclude that the court should have permitted Florencio to supplement the record so that Lapina's amended complaint could be considered in determining whether Tradewind had a duty to defend Florencio.[16]

█ We have also noted, however, that the timing of the amendment and Lapina's testimony cast some doubt on the claim's coverage potential. Thus, we cannot conclude on this record that Tradewind had a duty to defend Florencio on the slip and fall claim in Lapina's amended complaint. Instead, we vacate the court's order denying Florencio's motion to supplement the record and his motion for reconsideration, and remand this issue to the court. On remand, the court is instructed to permit Florencio to supplement the record with the amended complaint. Tradewind must be given the opportunity to conduct any investigation it deems necessary. The court may then determine whether the slip and fall claim raises a potential for coverage. Because we have concluded that Tradewind did not have a duty to defend Florencio on the claims contained in Lapina's original complaint, any of these claims realleged in the amended complaint would suffer from the same infirmity.

## IX.

While we have concluded the court was correct except with respect to its refusal to allow Florencio to supplement the record with the amended complaint, we must vacate the court's August 22, 1996 order granting Tradewind's motion for summary judgment and the January 15, 1997 judgment. The question of whether the slip and fall claim in the amended complaint raised a potential for coverage must be decided on remand. In that connection, the October 22, 1996 order denying Florencio's motions for reconsideration and to supplement the record are also vacated. The case is remanded to the court for proceedings consistent with this opinion.

---

16. We do not agree with Tradewind's contention that the amended complaint including the slip and fall claim was not newly discovered evidence, and thus the court's denial of Florencio's motion for reconsideration was proper. Lapina's motion to amend was not filed until August 30, 1996, after the court had entered a written order granting Tradewind's motion for summary judgment. Even though Florencio may have become aware of Lapina's January 23, 1992 fall in the bathroom when Lapina referred to it during her deposition on August 23, 1995, Lapina did not bring a claim against Florencio as a result of this fall until after the court had determined that Tradewind had no duty to defend Florencio. Therefore, the amendment was apparently new matter that could not have been raised at or prior to the hearing on the motion for summary judgment, and, as such, the court should have permitted Florencio to supplement the record.